Argued December 11, decided December 23, 1913, rehearing denied
February 17, 1914.

# SEAMAN *v.* PORTLAND.

(137 Pac. 203.)

**Municipal Corporations—Streets—Prescription—Evidence.**
In a suit to quiet title to land, evidence *held* to show that defendant city had been in open, notorious, continuous and adverse possession, improving the property as a street, for over 30 years.

[As to the essentials of adverse possession, see notes in 28 Am. St. Rep. 158; 88 Am. St. Rep. 701.]

From Multnomah: JAMES U. CAMPBELL, Judge.

Department 2.    Statement by MR. CHIEF JUSTICE McBRIDE.

This is a suit by Norma G. Seaman against the City of Portland, to quiet title to a triangular piece of land situated near the intersection of Ankeny, Sixth and Pine Streets in said city.

The diagram inserted in appellant's brief shows the relation of the triangular strip to the streets in question. It is approximately 14 feet wide at the large end and 14 feet long, tapering to a point on the north. The original plat and dedication of the streets was by Benjamin Stark, through whom plaintiff claims title.

Defendant answered, claiming title under sales of the property for street assessments in which the property was bid in by the city; one sale of all except the northeast quarter being made February 10, 1872, and another covering the remainder of the property being made June 19, 1877. Upon the sale of the first parcel a deed was issued to the city and recorded. There is no evidence of the issuance of a deed upon the second sale. There was a plea that Stark had made an implied dedication of the property to public use, and a further plea of title in defendant by adverse possession and

use of the property as a public street for more than the statutory period. From a decree in favor of the defendant, plaintiff appeals.

AFFIRMED: REHEARING DENIED.

For appellant there was a brief, with oral arguments by *Mr. Newton McCoy* and *Mr. Horace B. Nichols.*

For respondent there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, and *Mr. Lyman E. Latourette,* with an oral argument by *Mr. Latourette.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

Waiving all the other propositions in the case, we are satisfied that the city has been in open, notorious, continuous and adverse possession of the property in question, using it and improving it as a street, since 1878. This is not a case of mere permissive travel over vacant ground. On the contrary, the city went upon the premises under claim of right and color of title, filled it in, and laid pavement upon it in the same manner that it improved the rest of its streets, and it and the public generally have used it as a public street for a third of a century.

The manner and extent of this improvement and use is stated by Mr. D. W. Taylor, formerly city surveyor, as follows:

"Q. What was the general appearance of the block at that time?

"A. Well, to some extent that fractional block was a hole in the ground; it was below the grade of the street; kind of a hole there.

"Q. A low place?

"A. Yes, sir.

"Q. Can you tell what was done by the City Portland relative to improving that property along about the year '78?

69 Or.—19

"A. The street committee decided to fill it up so it could be used for street purposes. * *

"Q. What did you do at that time?

"A. I prepared an estimate for the common council. * *

"Q. Was the work completed according to the estimates that were contained in Exhibit 1 just introduced in evidence? * *

"A. It was completed according to the estimates.

"Q. I hand you a document marked 'Certificate P. G. Baker, fractional block between 5th and 6th, filed June 19, 1878. R. L. Durham, Auditor and Clerk.'

"A. One side is the certificate I signed stating that the work had been completed according to Ordinance No. 2143. It is practically a statement that the work had been completed and practically the estimates of the cost that were filed.

"Q. Is that your statement?

"A. Yes, sir.

"Q. Is that your signature [indicating]?

"A. Yes, sir. * *

"Q. Mr. Taylor, how long did that pavement remain on that block?

"A. Well, I can't tell definitely whether it was ever raised above that or not; but the macadam improvement was in 1894.

"Q. Describe what kind of pavement was laid under the ordinance introduced here.

"A. It was macadamized.

"Q. State whether or not it was laid all over the block.

"A. It was laid over the block and in front on Sixth. I don't know to what extent; but my impression is it was—my impression or recollection is that Pine Street had already been improved prior to that time on the south side of the block.

"Q. If I understand you correctly, this pavement was laid all over this block and on all sides but Pine Street?

"A. Yes, sir.

"Q. How was that street used thereafter?

"A. That block was to all intents and purposes a portion of the street; they crossed it and recrossed it in every direction.

"Q. Since when?

"A. 1878.

"Q. When, if you know, was this block repaved?

"A. Well, the block itself—a portion of it was repaved in 1893 under a contract for asphalt pavement from Morrison Street to Hoyt Street. That improvement contemplated improving Sixth Street; but Snell, Heitshu & Woodward, who put up the Commonwealth Building, they had a wide door, and they paid partly for putting asphalt on a portion of that street in order to get travel to it. Then in 1894 there was an ordinance passed improving Pine Street from Sixth Street to Seventh, and also Ankeny Street between Sixth and Seventh, and at that time this whole block was paved over with an asphalt pavement.

"Q. Has that been there ever since?

"A. Yes, sir; since '94. * *

"Q. Was the use of it for street purposes open?

"A. Yes, sir.

"Q. Was it visible?

"A. A party not familiar with the tract would not think of any fractional block being in there; any private property.

"Q. State whether or not the use for street purposes was open and notorious.

"A. Yes, sir; it was.

"Q. Was it exclusive?

"A. I don't know what you mean by exclusive; it was used for no other purpose.

"Mr. McCoy: Object as calling for the opinion of the witness.

"Q. Will you state to what extent travel existed over and across this block from 1878 on down to a year ago, when this metal booth was placed on it?

"A. Traffic going up and down Ankeny Street would invariably cross this block; the street was narrow, any way, any way on the south side; and anyone traveling down Sixth Street, going north, would cross this block.

"Q. State whether or not this block was improved with different kinds of pavement in substantially the same manner as the adjacent streets since 1878.

"A. It was improved just the same as the rest of the street adjacent to it.

"Q. State whether or not it was used just the same as the adjacent street.

"A. Yes, sir; it was.

"Q. Was there anything there, any curb or anything else, to indicate a line of demarcation between the public highway and private property?

"A. Not since 1878; not to my remembrance."

D. J. Zan, another witness, who lived close to the premises, testified in substance that from 1878 to 1911 it was used as a street, "all the time, all day long and night long, as far as that goes"; that it was finished and improved in the same manner as abutting streets; and that he was surprised to hear that it was anything else than a street. Other witnesses testified to the same effect.

It is plain that neither Stark nor his heirs have ever, within the last 40 years, laid any claim to the property, and none was made until it was sold upon a trumped up claim, which is suspicious in its inception, by an administrator, who was appointed with the evident view of securing this property, not for the estate of Stark, but for his own private purposes.

The decree of the Circuit Court is affirmed.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.