DARDEN *v.* LIVERPOOL & LONDON & GLOBE INSURANCE COMPANY.

[68 South. 485.]

1. INSURANCE. *Fire policy. Valued clause. Agreements. Statutes.*
   Under Laws 1912, chapter 224, providing that when real property, or buildings, or household or kitchen furniture insured against fire and situated within the state, are totally destroyed by fire, the company shall not be permitted to deny that it was worth the full value upon which the insurance was calculated, and that no insurance company or agent shall be permitted to insert in or attach to such policy a coinsurance clause, three-quarter valuation clause, or other like clause; it is lawful for an insurance company to write a so-called "schedule policy," covering both insurable realty and personalty, and attach a three-fourths value clause, with an express stipulation confining the application of the latter to the items of personalty listed and valued under separate heads, and in items separate and entirely distinct from the items of insurable realty, also separately listed and valued in the policy.

2. FIRE INSURANCE. *Policies. Agreements.*

It is contrary to the plain intent of section 2592, Code, 1906, as amended by Laws 1912, chapter 224, and contrary to public policy and void, for the parties to a fire insurance policy to attempt by special agreement to fix the legal *status* of portions of the property insured, that is, to determine absolutely and conclusively, by agreement the question as to whether certain property was real estate or personalty, so as to subject it to the three-fourths valuation clause.

APPEAL from the circuit court of Warren county.

HON. H. C. MOUNGER, Judge.

Suit by G. T. Darden against the Liverpool & London & Globe Insurance Company. From a judgment for plaintiff for an insufficient amount, he appeals.

The facts are fully stated in the opinion of the court.

*T. G. Birchett,* for appellant.

*McLaurin & Armistead,* for appellee.

STEVENS, J., delivered the opinion of the court.

In June, 1912, appellee executed and delivered a schedule policy of insurance covering fourteen different items, and specifically indemnifying the assured against loss by fire for the amount specified and the property described under each separate item. The policy, Exhibit A to the declaration, insures—
"against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding forty-four hundred and 00/100 dollars, to the following described property while located and contained as described herein and not elsewhere, to wit:

"Policy Form for Cotton Gins.

1. On two-story frame building with metal roof, occupied as a cotton gin................ $    500
2. On movable machinery of all kinds in use (excepting engine and boiler and appurtenances) including gin stands, with their

feeders and condensers, cotton press and appurtenances, suction elevator, fan, vacuum box and distributor, with piping, counter shafts and pulleys belonging thereto, battery condensers, dust and lint flues, seed blower, seed feeder and conveyor, shafting, belting, pulleys, journals, gristmill, scales, tools, piping and hose, only while contained in the above-described ginhouse...................... $1,000

3. On one-story frame boiler room, with metal roof ................................ $   50

4. On engine and boiler, inclusive of foundations and settings, smokestack, heater, and pumps while contained in above-described boiler room............................ $  250

5. On one-story frame cotton house, with metal roof ................................ $  300

6. On one-story frame seed house, with metal roof ................................ $ 150

7. On platform scales situated............... $  50

8. On assured's unbaled cotton, ginned and unginned, while in said cotton house........ $ 200

9. On assured's unbaled cotton, ginned and unginned, while in above-described ginhouse ................................ $  100

10. On unbaled cotton, ginned and unginned, belonging to others, for which the assured has, in writing or by an appropriate stamp on ginner's ticket at time of receipt of cotton, assumed liability for loss or damage by fire thereto, while contained in said ...... house................... $  100

$4,400.00 total concurrent insurance permitted, including this policy—annual rate ......%.

11. $500.00 On his one-story frame shingle-roof building occupied by the assured as a general

merchandise store and situated detached at Blanton, Sharkey county, Miss.

12. $100.00 On his office furniture and fixtures including iron safe, while contained in the above-described building.

13. $200.00 On his store furniture and fixtures including counters, shelving, scales, show cases, tables, and all other furniture and fixtures usual to general merchandise stores.

14. $900.00 On his stock of general merchandise, such stock as is usually carried for sale in a general merchandise store, all while contained in the above-described building.''

On the face of the policy is written the following stipulation:

"It is understood and agreed and is hereby made a warranty on the part of the assured that all furniture and fixtures contained in the above-described store building, and items described in schedule No. 2, shall be defined and considered as personal property for the purpose of this contract.''

—and likewise the following stipulation:

"Three-fourths Value Clause.

"It is understood and agreed to be a condition of this insurance, except as to scheduled items numbered 1, 3, 4, 5, and 6, and five hundred dollars on store house, that in the event of loss or damage by fire, to the property insured under this policy, this company shall not be liable for an amount greater than three-fourths of the actual cash value of each item of property insured by this policy (not exceeding the amount insured on each item), at the time immediately preceding such loss or damage; and in the event of additional insurance, if any is permitted hereon, then this company shall be liable for its proportion only of three-fourths such cash value of each item insured at

the time of the fire, not exceeding the amount insured on each item."

The policy contains these further provisions and stipulations:

"Exemption Clause—Mississippi.

"It is expressly agreed and understood that the three fourths valuation clause, coinsurance clause, or other like clause attached to this policy shall have no application whatever, and is not intended to have any application whatever, to any real property or buildings, household or kitchen furniture, that may be insured in this policy with other property therein, but shall apply only to such property as the law permits a three-quarters valuation clause, coinsurance clause, or other like clauses to be applied to.

"Attached to and forming a part of policy No. 444218 of the L. & L. & G. Insurance Company.

"R. C. WILKERSON, Agent.

"All of said property being located on farm, plantation or land of assured known as Blanton, situated or on lot No.        , block No.        , in the town of        , in the county (or parish) of Sharkey, state of Mississippi."

"It is understood and agreed and is hereby made a warranty on the part of the assured that all machinery, boiler and engine, and all materials and things (except the gin and boiler house building or buildings proper) contained in the gin and boiler house buildings shall be defined and considered as being personal property for the purpose of this contract."

A fire occurred on the 2d day of November, 1912, destroying certain portions of the property described in the policy in items 1, 2, 5, 6, 7, 8, 11, 12, 13, and 14, but no damage was claimed under items 3, 4, 9, and 10.

In the statement of loss claimed by appellant we find the following tabulation:

|  | Value and Loss | Claimed of Insurance Co. |
|---|---|---|
| Item No. 1, gin building, total loss ...... | $  450 00 | $  500 00 |
| "    No. 2, machinery contained in warehouse . | 940 00 | 1,000 00 |
| "    No. 5, cotton house, loss ..... | 275 00 | 300 00 |
| "    No. 6, value and loss on seed house | 200 00 | 150 00 |
| "    No. 7, platform scales, loss ....... | 60 00 | 50 00 |
| "    No. 8, unbaled cotton, loss ........ | 210 00 | 200 00 |
| "    No. 11, store building | 450 00 | 500 00 |
| "    No. 12, office furniture and fixtures | 110 00 | 100 00 |
| "    No. 13, store furniture and fixtures | 200 00 | 200 00 |
| "    No. 14, stock of merchandise ... | 1,000 00 | 900 00 |
| Total........ | $3,895 00 | $3,900 00 |

There was no contest over items 1, 5, 6, and 11, amounting to one thousand four hundred and fifty dollars, and the insurance company tendered this amount in settlement. The controversy is over items 2, 7, 8, 12, 13, and 14. Appellant filed his declaration, exhibiting therewith the policy and copy of the proof of loss, and claimed the full amount of the several items contained in the schedules above set forth. Appellee interposed several special pleas, contending that the valued policy law of this state (section 2592 of the Code of 1906, as amended by chapter 224, Laws of 1912) did not apply

to the machinery listed in item No. 2, to the platform scales in item No. 7, to the unbaled cotton in item No. 8, to the office furniture and fixtures in item No. 12, to the store furniture and fixtures in item No. 13, and to the stock of merchandise in item No. 14. Appellee claimed that its liability would be limited to three-fourths of the actual value, of these items as shown in the statement of loss. In its special plea No. 1, directed to the claim for machinery under item No. 2, the insurance company set out and pleaded in defense the several stipulations contained in the policy, to the effect that the property listed under schedule or item No. 2 should be defined and considered as personal property for the purposes of this contract; that this provision was a warranty on the part of appellant; that the three-fourths value clause was effective whereby the company was liable for its proportion only of three-fourths the cash value of each item insured at the time of the fire; that this three-fourths value clause, by the special stipulation hereinabove copied in full had no application whatever to any real property or buildings, household or kitchen furniture, but that appellant had agreed that the items listed under schedule or item No. 2, for the purposes of this policy, was personal property, and that therefore the three-fourths value clause applied and limited the liability of the insurance company. Appellee also interposed special plea No 2 in defense of the amount claimed under item No. 7, platform scales, setting forth the agreement of the parties that this item should be defined and considered as personal property, and that it was only liable for three-fourths of the actual value of the scales. Appellee likewise interposed special pleas Nos. 3, 4, 5, and 6, applying respectively to items 8, 12, 13, and 14, claiming that it was not liable, under the three-fourths value clause, for more than three-fourths of the actual value of these items.

Appellant interposed a demurrer to᛫ each of these pleas, setting forth, in substance, the objection and contention that the declaration shows on its face that the property scheduled in items Nos. 2, 7, 12, and 13 constitutes real estate and is not subject to the application of the three-fourths value clause under our statute; that the three-fourths value clause could not be applied to property scheduled under items 8 and 14 because the declaration shows on its face that the policy covers property to which the valued policy law applies; that the insurance company attempted to attach a three-fourths value clause to this policy and make it apply to certain articles listed therein; that under the act of 1912 it was unlawful to attach a three-fourths value clause to this kind of policy.

In the fifth ground of demurrer appellant contends that the first, second, fourth, and fifth special pleas are an attempt to enforce an agreement of the parties to the effect that certain property, which is ordinarily real estate, is to be changed in its character from real property to personal property, and that this cannot be done by agreement. The same objection is raised in the seventh ground of demurrer. In the sixth ground of demurrer appellant contends that a part of the subject of the insurance is real property; that it was unlawful and against public policy to attach the three-fourths value clause, and that by virtue of the statute said clause is written out of the contract, and "does not apply to any item in any of the schedules." The court overruled the demurrer of appellant and entered judgment for appellant for the amount admitted to be due ⸜ by the insurance company in and by its special pleas, to wit, three thousand three hundred and forty dollars, and not for three thousand nine hundred dollars, the amount sued for in the declaration.

Proper exception was made to the action of the court, a motion for a new trial was overruled, and this ap-

peal is prosecuted by the following assignment of errors:

"(1) The court erred in overruling the demurrer of the appellant to the appellee's special pleas Nos. 1, 2, 3, 4, 5, and 6.

"(2) The court erred in rendering the judgment that it did in favor of the appellant for a less sum than sued for.

"(3) The court erred in not sustaining the motion of the appellant for a new trial to set aside the judgment rendered herein."

There are two questions of importance squarely presented for our decision by this appeal: First, under the Amendatory Act (chapter 224, Laws of 1912) is it lawful for an insurance company to write a so-called "schedule policy," covering both insurable realty and personalty, and attach a three-fourths value clause, with an express stipulation confining the application of the latter to the items of personalty listed and valued under separate heads and in items separate and entirely distinct from the items of insurable realty, also separately listed and valued in the policy? Second, can cotton gin machinery installed in a gin house as a part of an operating cotton gin, store fixtures, or other items of property whose character, in the absence of exceptional circumstances, is fixed as real estate, be, by special agreement written into the face of the policy, changed or conclusively defined and fixed as personal property? The act of 1912 reads as follows:

"No insurance company shall knowingly issue any fire insurance policy upon property within this state for an amount which, together with any existing insurance thereon, exceeds a fair value of the property, nor for a longer term than five years. When real property, or buildings, household or kitchen furniture insured against loss by fire, and situated within this state,

are totally destroyed by fire, the company shall not be permitted to deny that the property insured was worth at the time of the issuing of the policy the full value upon which the insurance is calculated, and the measure of damage shall be the amount for which the property was insured. No insurance company, or agent thereof, shall be permitted to insert or attach a coinsurance clause, three-quarters value clause, or other like clause to a policy of this kind, and any fire insurance company, or agent thereof, who violates this act shall be guilty of a misdemeanor, and shall, upon conviction, be fined not less than two hundred dollars nor more than one thousand dollars for each offense. In case of partial loss, or damage by fire, to real property or buildings, household or kitchen furniture, the measure of damages shall be an amount equal to the damage done the property, not to exceed the amount written in the policy.''

The right of the insurance company to attach the three-fourths valuation clause to a policy covering personalty alone, or to write separate policies covering separately the real and personal property of one person, is unquestioned. The only difficulty is suggested by the phrase in the act ''a policy of this kind.'' Appellant contends that this language of the law in question absolutely forbids the physical appending or indorsement of a three-fourths value clause to any writing commonly known as the ''policy,'' wherein real estate, or buildings, or household or kitchen furniture, is insured. Appellee insists, and the trial court held, that the words ''a policy of this kind'' is synonymous with the words ''a contract of this kind of insurance,'' that the writing of scheduled policies was not prohibited by the act, and that it is permissible to embrace in one writing or policy separately listed items of insurable realty and personalty, with the agreed value or amount of insurance on each item so listed, and, by an express

stipulation on the face of the policy, to limit the applica-
tion of an attached three-fourths value clause to all the
property insured in the policy except that embraced
within the prohibition of the statute, to wit, "real
property or buildings, household or kitchen furniture."
It was manifestly the intention of the legislature to
prohibit insurance companies from appending or at-
taching the three-fourths value clause to any contract
of insurance covering any form of "real property or
buildings, household or kitchen furniture." By sec-
tion 2592 of Code of 1906 a three-fourths valuation
clause in any policy covering property of this kind was
nugatory.   As said, by MAYES, J., in *Insurance Co.* v.
*Barron,* 91 Miss. 722, 45 So. 875:

"Section 2592, Code 1906, is as much a part of this
policy as if written in the face of it.  Any provision
in the insurance policy which conflicts with it in any
way is a nullity.".

But it is a matter of common knowledge that in-
surance companies, after the enactment of section 2592
of the Code, continued to attach the three-fourths value
clause to policies insuring buildings and furniture, and
in adjusting losses the representatives of companies
frequently, in the face of the statute, relied on this
feature of the contract in arriving at the amount of
loss, and used the unlawful contract to hammer down
values especially in cases where the loss was claimed
by the companies to be partial and not total; and in
many cases the illiterate and those persons very sen-
sitive to the obligations of their express contract were
imposed upon.   To remedy this mischief, and to pre-
vent companies from gaining an unfair advantage in
the adjustment of losses by a semblance of right that
was in fact a wrong, the legislature of 1912 enlarged
upon the statute and made it unlawful "to insert or
attach such a clause to 'a policy of this kind.'"  By
this amendment the legislature means to say that no

such clause shall be inserted or attached to a policy of the character dealt with so as to incorporate in or make such three-fourths value clause a part of the contract. The contract of insurance, however, is one thing; the writing or policy evidencing the contract is another. In the case at bar the policy evidenced a contract covering fourteen separate and distinct items of property, separately valued, although a lump premium is charged. The contract is divisible. A loss might occur and be adjusted under item 1 of this policy without disturbing or considering the rights of the parties under any one of the other items of property insured. The three-quarters value clause was attached in this case to the writing commonly called the policy, but by express contract of the parties it did not apply to any species of property dealt with by the statute. Its presence could in no sense mislead or injure any one, however innocent or illiterate. It was no part of the 'contract of insurance on "real property or buildings, household or kitchen furniture," and neither added to nor took away any right of either party in reference to such property. The writing of a schedule policy of this kind, instead of two or more policies, is a convenience to both parties. We cannot therefore, yield to the contention of counsel for appellant that the attaching of the three-fourths value clause in this case was violative of the statute, and the ruling of the trial judge on the first proposition presented by this appeal is accordingly affirmed.

Upon the second proposition we hold that the special agreement of the parties, attempting to fix the legal *status* of portions of the property insured, that is, to determine absolutely and conclusively, by agreement, the question as to whether certain property was real estate or personalty, is contrary to the plain intent of the statute (section 2592 of the Code of 1906, as amended by Laws of 1912). Such agreement is contrary to

public policy and is void.  The statute was conceived and enacted for the public good, and its beneficent provisions cannot be changed, abrogated, or waived by agreement of the parties.  *Insurance Co.* v. *Shlenker,* 80 Miss. 667, 32 So. 155; *Insurance Co.* v. *Barron, supra; Havens* v. *Germania Insurance Co.,* 123 Mo. 403, 27 S. W. 718, 26 L. R. A. 107, 45 Am. St. Rep. 570. The last case involved the construction of section 6009 of the Revised Statutes of 1879 of Missouri, providing:

"Whenever any policy of insurance shall be written to insure any real property, including building or buildings owned separate from the realty, as well as such as are a part of the realty, and the property insured shall be wholly destroyed, . . . the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property when insured and the true amount of loss and measure of damages when destroyed," etc.

One of the inquiries was whether the subject-matter of the insurance brought it within the statute.  The property was a mill and machinery therein.  There was a question as to whether the assured had waived the protection secured by the statute, and the court uses this language, to wit:

"Keeping in view the manifest purpose of our legislature to give greater security to the insured, we hold that it is not competent for insurance companies, under this statute, to avoid their fixed liability for losses on real property by agreeing with the owner to denominate it personal property, and thus by a mere stroke of the pen deprive its owner of the protection of this statute, when for all other purposes in law it is real estate."

And again:

"While the policy specifies the property insured, it leaves it to the law to define its character, and by the description given the law denominates its real property."

The agreement, therefore, in this case, ''that all machinery, boiler and engine, and all materials and things contained in the gin and boiler house buildings shall be defined and considered as being personal property for the purpose of this contract,'' and, further, ''that all furniture and fixtures contained in the above-described store building, and items described in schedule No. 2, shall be defined and considered as personal property for the purpose of this contract,'' was and is against the statute in question and void. The pleas of the defendant pleaded this agreement, and the trial court, by overruling the demurrer to such pleas, evidently held that the agreement controlled, and to that extent we think committed error.

We express no opinion now as to whether all of the property mentioned in this special agreement of the parties was realty, or within the statute. This is a fact or inquiry to be determined by the lower court, under proper issue and instructions.

We, therefore, answer the second inquiry submitted by this appeal for our decision in the negative, and hold that it was not competent for the parties to define and fix as personal property the items of property referred to in the agreement, and for this reason the judgment of the lower court must be set aside, and this cause must be and is hereby reversed and remanded.

*Reversed and remanded.*