CLAXTON *et ux. v.* FIDELITY & GUARANTY FIRE CORPORA-
TION.

(Division A.  June 14, 1937.  Suggestion of Error Overruled Nov. 22,
1937.)

[175 So. 210.  No. 32675.]

**McFarland & Holmes**, of Aberdeen, for appellants.

558

**Leftwich & Tubb**, of Aberdeen, for appellee.

560

Argued orally by **G. M. Holmes**, for appellant, and by **Condie L. Tubb**, for appellee.

**McGowen. J.**, delivered the opinion of the court.

The appellee, Fidelity & Guaranty Fire Corporation, exhibited its bill in equity against Harvey Claxton and his wife; the Building & Loan Association of Jackson, Miss., and its trustees, to set aside and cancel a certain fire insurance policy issued to Harvey A. Claxton on the 11th day of January, 1933. The policy was in the sum of $3000, and applied $2000 on the family residence in Aberdeen, and $1000 on the furniture and fixtures therein.

On August 18, 1933, a fire occurred partially destroying the building and some of the household effects, and rendering damage to certain other furnishings. The bill alleged as a ground for the cancellation of the policy the fraudulent conduct of the insured before and since the fire. It charged that Claxton set fire to his own house; and further stated that, while being examined under oath, provided for in the terms of the policy, he violated the policy by swearing falsely as to the value of personal property and the building, thereby rendering the policy void. It further charged that the Jackson

Building & Loan Association had a mortgage on the house and lot, and that the insurance policy contained a loss payable clause to said building and loan association, as its interest might appear. The bill also alleged that the appellee tendered the amount due on the mortgage to the building and loan association, and thereafter, under the mortgage clause attached to the insurance policy, sought to have a foreclosure on the real estate therein conveyed for the amount paid by it to the building and loan association.

Claxton and his wife answered the bill, making their answer a cross-bill, and denied the material allegations thereof, denied that Claxton set fire to the house, or that he had falsely overvalued his property, or otherwise sworn falsely, and sought a decree for the recovery of the face value of the fire insurance policy. Appellee replied to this cross-bill, denying the right of Claxton to any recovery.

The record is rather voluminous and we do not deem it necessary, or profitable to any one concerned, to undertake to detail the broad range of facts developed in this case.

The chancellor, in a written opinion, found that (1) the proof failed to sustain the charge that Claxton had set fire to his house; (2) the proof sustained the charge that Claxton had sworn falsely in an examination held under the terms of the policy, and had grossly overvalued his property in three particulars: (a) in his proof of loss he claimed damage for one piano, fixing its value at $500, when the piano at the time of the fire was not worth more than $25 to $50, and was not wholly destroyed; (b) he claimed a total loss of silverware in the sum of $150, when, as a matter of fact, such silverware was not in the building at the time of the fire; and (c) he filed proof of loss of an electric sewing machine valued at $165, when, at the time of the fire, the only part of the machine in the house was the cabinet, the motor and machinery having been removed. The chan-

cellor also held that the fire insurance policy was indivisible, and, because of the fraud and false swearing, as detailed above, the entire policy was avoided. He granted a decree against the Claxtons for the amount paid to the building and loan association and ordered a sale of the property to satisfy the mortgage in favor of the insurer as subrogee. The real estate was afterwards sold for a small amount and the sale confirmed.

The fire insurance policy in this case seems to be a standard schedule policy; the premium paid therefor by the insured was named as an entirety at $19.50, $2,000 was stipulated as the amount of insurance on the dwelling house and $1,000, listed separately, on household and kitchen furniture and personal property. Two clauses of the policy, relied on by the insurance company, were the basis of the decision of the lower court; they are as follows: "The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examinations under oath by any person named by this company, and subscribe the same; and, as often as required, shall produce for examination all books of account, bills, invoices, and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made." And: "this entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

1. We are of the opinion that the chancellor was correct in finding that the proof failed to sustain the charge that Claxton set fire to his own house.

2. We are of the opinion that the insurer fully met the burden of proof in showing that the insured had grossly overvalued his personal property in two of the particulars, set out above. Whether or not he was correct concerning the sewing machine we are in some doubt, but the clear implication of the opinion of the chancellor was that, since the proof showed that the insured had overvalued the piano and silverware, the supposition was that he had also overvalued the balance of his personal property; in other words, that the insured had padded his valuations. His valuation of the personal property destroyed was about $2,000, while the full amount of insurance on all his personal property was only $1,000.

Counsel for appellants invoke the principle that, where the actual value of the property is greater than the amount of insurance, such overvaluation is immaterial, although intentionally false, and the insurer is not thereby, in fact, injured, and, even if Claxton had overstated the valuation of certain articles, there still remained, after excluding these items, a valuation in excess of the face value of the policy. They further contend that, in order to avoid liability on this policy because of overvaluation (the estimate of loss by the insured), the insurer must show that the overvaluation was made with an intent to defraud and deceive it. Phoenix Ins. Co. v. Summerfield, 70 Miss. 827, 13 So. 253; Mississippi Fire Ins. Co. v. Dixon, 133 Miss. 570, 98 So. 101; Home Ins. Co. of New York v. Lowenthal (Miss.), 36 So. 1042, and Claflin v. Commonwealth Ins. Co. of Boston, 110 U. S. 81, 3 S. Ct. 507, 28 L. Ed. 76.

The evidence as to the value of the property was material. The record disclosed that while Claxton was being examined he swore under oath that he had bought the piano only five or six years before, and on the trial of the case it was developed, without controversy, that he had owned the piano more than twenty years. He stated on the trial that perhaps he had overvalued it.

The chancellor was warranted in finding that the silverware was not in the building. As to the sewing machine, Claxton's equity therein at best did not exceed $30. Good faith is required on the part of the insured in making his proof of loss, because, so far as the insurer is concerned, where a policy is written upon a lot of household goods and furniture, he must necessarily rely on the statement in the proof of loss and on such an examination of the insured. And, no matter how inexperienced a person is, he certainly knows that fair dealing and honesty require an approximation of the truth in such a matter. The argument of appellants is that Claxton's overvaluation of the piano, silverware, and sewing machine may be conceded, yet, if the value of these articles be disregarded, still there is a loss as sworn to by Claxton in excess of $1,000, the full amount of coverage on the personal property. They say this is true even though Claxton intentionally swore falsely with intent to deceive the insurer as to these three items. Claxton was the only person who had knowledge of the property in his house when it burned. His wife was not there, and had been away for some weeks. Under these circumstances, the chancellor declined to accept Claxton's valuation and list of property lost or damaged by fire, and had a right to reject Claxton's entire evidence as to the whole loss. The household goods were not totally destroyed, and the difference in these valuations was not slight, but such as to evince a reckless disregard for the truth and the facts. There is quite a difference in the value of a piano five years old and one more than twenty years old.

This case is not controlled by Home Ins. Co. of New York v. Lowenthal, supra, wherein this court held that, although the insured designedly swore falsely as to a valuation of goods at $3,646.75, when in truth and in fact his declaration alleged, and the evidence showed, that the value was only $3,400, and the amount of insurance thereon was $1,000, it was impossible that the false swearing was harmful or prejudicial to the insur-

ance company. That is not true of the facts developed here. One cannot escape the conviction that the false statements here were knowingly and willfully made, and therefore the intent to deceive will be implied. Of course, a mere overstatement of loss, based upon an erroneous estimate of value which is but the expression of opinion, does not operate to avoid the policy, the statement must be false and fraudulent. The overvaluation in the case at bar, plus the statement of time he had been in possession of the piano and the other items referred to, will not admit of debate as to intention and ultimate effort, so that we think it is clear that the insured was not entitled to recover on that part of the policy which covered the furniture and personal property.

3. The Claxtons contend that the court erroneously held that the policy on the house and on the furniture and personal property was an entirety or an indivisible contract. The court below did not pass upon the facts as to the overvaluation of the damage to the dwelling. That was a matter of calculation about which honest men might differ, for instance: It was the opinion of Ben H. McFarland, who made out the proof of loss after having looked at the property and being acquainted with it, that the damage thereto would approximate $4,000, and on his judgment the insured signed and swore to the proof; while the estimates of contractors as to the cost of repair varied from about $1,600 to about $2,000. The court deemed it unnecessary, in view of his conclusion that the policy was indivisible, to pass upon the facts as to the dwelling.

Was the contract of insurance indivisible? Numerous authorities from other jurisdictions hold that where the premium on different articles, separately named for a specific amount of insurance, is fixed and paid as an entirety, then the policy is indivisible. North British & Mercantile Ins. Co. v. Nidiffer, 112 Va. 591, 72 S. E. 130, Ann. Cas. 1916A, 464; Willis v. Horticultural Fire Relief, 69 Or. 292, 137 P. 761, Ann. Cas. 1916A, 449; Dolloff

v. Phoenix Ins. Co., 82 Me. 266, 19 A. 396, 17 Am. St. Rep. 482; Barnes v. Union Mutual Fire Ins. Co., 51 Me. 110, 81 Am. Dec. 562. In those cases it was held that fraud and false swearing as to valuations of property avoids the entire policy, but these decisions are from states which have held that the contract is indivisible when made. This court is not in agreement with that line of reasoning and has repeatedly held that a schedule policy, such as we have before us, insuring various items and fixing the amount of insurance to be paid on each, is separable, although the premium is fixed as an entirety; and that because the policy is void as to one item, that fact does not render it unenforceable as to the others. Phoenix Ins. Co. v. Summerfield, supra; Mitchell v. Mississippi Home Ins. Co., 72 Miss. 53, 18 So. 86, 48 Am . St. Rep. 535; Darden v. Liverpool & London & Globe Ins. Co., 109 Miss. 501, 68 So. 485; Scottish Union & National Ins. Co. v. Warren Gee Lumber Co., 118 Miss. 740, 80 So. 9, 12, and National Union Fire Ins. Co. v. Provine, 148 Miss. 659, 114 So. 730.

In the Provine Case this court held that a contract, not differing materially from the one here under consideration, which insured a dwelling for a specified amount and the household and kitchen furniture for another amount, was void and unenforceable as to the dwelling because the insured had represented to the insurer that he did not have additional insurance on such dwelling, when in fact he did; but the insured did not have additional insurance on his household and kitchen furniture, and therefore the breach of the policy by the insured as to the residence had no effect on the validity of the policy as to the household and kitchen furniture. The court held that such a policy was divisible. The stipulation in that policy which avoided the contract as to the dwelling was as follows: "If the insured, without written consent thereon, has now, or shall hereafter procure, any other contract of insurance, whether valid or not, on *any of said property, then this*

*policy shall be null and void."* (Italics ours.) There seems to be no material difference in the language of the contract there and the one here; the one here states, "this entire policy shall be void."

In the Warren Gee Lumber Company case this court held, when construing a policy not essentially different from the one in the case at bar, as follows: "The policy in suit is what is known as a divisible item policy; that is to say, that the insurance on each item is separate and distinct from the other items. It is in effect the same as if there was a separate insurance policy issued on each separate item. The validity of the insurance under one item would have no effect upon the validity of the insurance as to the others; or, as it is sometimes termed, it is a schedule policy which is divisible."

These and the other authorities cited from our own court put the matter at rest that the policy here involved was divisible. It must be remembered that insurance contracts are construed most favorably to the insured. That rule is too trite to require citation of authorities.

The court below has not passed upon the facts at issue as to liability, and the amount of loss incurred on the dwelling, and therefore we reverse and remand the case to the lower court for the determination of that question, and affirm the case as to the finding that there was no liability for the furniture and personal property.

Affirmed in part; reversed and remanded in part.