767 So.2d 485 (2000)
Rodolfo Z. SCHNEER and Diane Schneer, Appellants,
v.
ALLSTATE INDEMNITY COMPANY, Appellee.
No. 3D98-2541.
District Court of Appeal of Florida, Third District.
May 17, 2000.
Opinion on Joint Motion For Dismissal October 18, 2000.
*486 Law Offices of Karen A. Curran and Karen A. Curran, Coral Gables; Hersch & Talisman, P.A. and Patrice A. Talisman, Miami, for appellant.
Angones, Hunter, McClure, Lynch & Williams, P.A. and Christopher J. Lynch, Miami, for appellee.
Before SCHWARTZ, C.J., GREEN and FLETCHER, JJ.
GREEN, J.
The insureds, Rodolfo and Diane Schneer, appeal from a final judgment entered pursuant to an adverse jury verdict on their contractual claim against their homeowners insurer, Allstate Indemnity Co. ("Allstate"). We affirm with directions.
The Schneers were the owners of a home located in Coral Gables when Hurricane Andrew struck south Dade County in August 1992. The Schneers' home as well as its contents were insured under a policy issued by Allstate. This policy valued the home at $347,500 and its contents at $260,625. The policy provided for replacement cost coverage for both the dwelling and personal property contents. The policy also contained the following concealment or fraud provision:
This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts or if you intentionally conceal or misrepresent any material fact or circumstance, before or after loss. We do not cover any other insured person who has concealed or misrepresented any material fact or circumstance, before or after a loss. If it is determined that this policy is void, all premiums paid will be returned to you since there has been no coverage under this policy. (Emphasis in the original).
As a result of the hurricane, the Schneers claimed both dwelling and personal property damages. In May 1993, they submitted a sworn proof of loss to Allstate seeking approximately $116,000 in damages to the house. They also filed a separate sworn proof of loss seeking approximately $67,000 for personal property losses. According to the Schneers, after inspections by some experts, who apparently informed the Schneers that their carpet and furniture could be cleaned or repaired rather than replaced and that an original oil painting would not be considered damaged by water unless stains showed in the backing, the Schneers amended their proof of loss claim for contents damages to $18,000. Allstate initially advanced $3,500 to the Schneers following Hurricane Andrew.
In May 1994, however, Allstate denied both of the Schneers' claims for damages to their home and its contents on the ground that the Schneers had intentionally misrepresented or inflated the amount of loss in their contents proof of loss. The Schneers filed this breach of contract action *487 against Allstate. Allstate answered and counterclaimed for recission and breach of contract based upon the concealment and fraud provision of the policy.
This case proceeded to a jury trial where the parties presented conflicting evidence as to the damage done to the Schneers' home and personal contents by the storm and as to whether the Schneers had intentionally concealed or misrepresented any material fact to Allstate. During the trial, the Schneers unsuccessfully sought to call a William Porter to testify as their expert witness. Mr. Porter had formerly been employed by the Florida Department of Insurance Division of Insurance Fraud, as a special investigator and later as assistant division director/division counsel. In such roles, he investigated and prosecuted criminal insurance fraud schemes and testified in court proceedings, including as an expert.
The Schneers proffered that Mr. Porter would testify as to the general practice of adjusting in the insurance industry; the parameters or guidelines that an insurance fraud adjuster uses in order to make a determination of whether insurance fraud has been committed; and that, in his opinion, this case involved nothing more than an adjusting dispute rather than fraud.[1] *488 The trial court found this testimony to be irrelevant and excluded the same.
The parties stipulated that the jury should first be asked to determine whether the Schneers had intentionally misrepresented any material fact or circumstances in making their contents claim.[2] Over the Schneer's objection, however, the trial court ruled that if the jury answered yes to this question, the Schneers would not be entitled to recover any sums from Allstate for the damage to either their contents or their dwelling.
The jury returned its verdict finding that the Schneers had intentionally misrepresented a material fact or circumstance in submitting their contents claim. Pursuant to its earlier ruling, the trial court entered final judgment in favor of Allstate on the Schneers' claims and found over their objection, that the policy was void and that Allstate was entitled to rescission. The Schneers timely perfected this appeal.
The appellants first assert that the lower court reversibly erred in excluding the proposed testimony of their expert witness. They maintain that Mr. Porter's expert testimony was admissible pursuant to section 90.702, Florida Statutes (1993),[3] where it would have been patently helpful to the jury. Allstate counters that Mr. Porter's proposed testimony was impermissible where it was calculated only to instruct the jury how to decide the ultimate issue in this case (i.e. whether there was fraud) rather than to provide them with evidence for their independent determination. Initially, we note that the admission and scope of such expert testimony rests within the broad discretion of the trial court. See Town of Palm Beach v. Palm Beach County, 460 So.2d 879, 882 (Fla.1984); Hernandez v. Home Depot U.S.A., Inc., 695 So.2d 484, 485 (Fla. 3d DCA 1997).
Under section 90.703 of Florida's Evidence Code, a witness is permitted to testify to an ultimate fact in a case. This statute specifically provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it includes an ultimate issue to be decided by the trier of fact." § 90.703, Fla. Stat. (1993). However, this rule does not render admissible all opinions on the ultimate issues. "Witnesses will be prevented from expressing their conclusions when the opinion only tells the jury how to decide the case and does not help the jury to determine what occurred."[4]See, e.g., Town of Palm Beach, 460 So.2d at 882 (trial court abused its discretion in permitting petitioner's expert on municipal taxation to repeatedly opine that the challenged services did not provide the requisite real and substantial benefit); Gurganus v. State, 451 So.2d 817, 823 (Fla.1984) (proper for expert to give testimony regarding the effect of a given quantity of alcohol on defendant's ability to form specific intent; improper for expert to testify whether defendant's actions were premeditated); 3-M Corp.McGhan Medical Reports Div. v. Brown, 475 So.2d 994, 997 (Fla. 1st DCA 1985) (error to permit expert in products liability case to testify that product was defective); Libby *489 v. State, 540 So.2d 171, 172 (Fla. 2d DCA 1989) (no error in excluding psychiatrist's opinion "as to whether the defendant committed the lewd acts."); Lamazares v. Valdez, 353 So.2d 1257 (Fla. 3d DCA 1978) (expert may not testify that the defendant was untruthful and liable to make a mistake or misjudgment in his driving ability).
As previously stated, the initial issue before the jury in this case was whether the Schneers perpetrated a fraud in submitting their contents claim to Allstate. We think that under the aforementioned authority, the trial court correctly excluded Mr. Porter's testimony that no fraud had been committed where it had the effect of advising the jury how to decide this case, rather than assisting it in determining what had occurred. Further, we cannot find that the exclusion of Mr. Porter's remaining proffered testimony regarding the insurance industry's general standards for adjusting claims or guidelines used to determine whether a fraud has been committed was an abuse of discretion. This testimony was of limited probative value on the issue of whether the Schneers had perpetuated a fraud in this case. That is, while such evidence may have been of tangential interest to the jury in this case, it was not necessary for their resolution of the ultimate issue of whether the Schneers had intentionally misrepresented or over-inflated their contents claim. Compare, e.g., Red Carpet Corp. of Panama City Beach v. Calvert Fire Ins. Co., 393 So.2d 1160 (Fla. 1st DCA 1981) (Exclusion of expert's testimony regarding insurance adjusting, policy provisions, and trade custom in the insurance industry error where the case essentially turned on an interpretation of the parties' rights and obligations under the "Loss of Earnings Endorsements.").
Finally, the Schneers assert that the lower court erred in concluding that their misrepresentations as to their contents claim voided their homeowner's policy in its entirety. They argue that notwithstanding the specific concealment and fraud provision contained in the policy, their structural or dwelling coverage must be deemed severable or divisible from their contents coverage such that a misrepresentation on a claim for coverage under one does not effect the validity of the other. Thus, in the absence of allegations and/or proof of fraud in connection with their claim for dwelling damages, the Schneers maintain that the policy must be deemed valid and enforceable for such damages, since the forfeiture of insurance policies are generally disfavored. See LeMaster v. USAA Life Ins. Co., 922 F.Supp. 581, 585 (M.D.Fla.1996); Boca Raton Community Hosp., Inc. v. Brucker, 695 So.2d 911, 912 (Fla. 4th DCA 1997).
Courts in various jurisdictions have varied greatly on the issue of the divisibility of an insurance policy which covers different classes of property and where there has been a breach of condition as to one class which does not involve another class.[5] Florida has long aligned itself with the majority of jurisdictions which recognize the divisibility of an insurance policy but only in the absence of fraud and misrepresentation.[6] In Hartford Fire Ins. Co. v. *490 Hollis, 64 Fla. 8, 59 So. 785 (1912), the Florida Supreme Court enunciated the doctrine thusly when addressing a fire insurance policy:

[I]n the absence of misrepresentations and fraud, where a fire insurance policy covers different classes of property, each of which is separately valued and is insured for a distinct amount, the contract is severable, and a breach of the contract of insurance, that delegates to and directly affects only one of the classes of the property insured, does not invalidate the policy as to the other class of property.
Id. at 786 (emphasis added).
The court later reiterated this principle in National Union Fire Ins. Co. v. Cubberly, 68 Fla. 253, 67 So. 133, 135 (1913). Unfortunately, where there has been fraud or misrepresentation, as in the instant case, we must treat the insurance policy as indivisible and give full force and effect to the forfeiture provision contained in the concealment and fraud provision of the policy. Accord Wong Ken v. State Farm Fire & Cas. Co., 685 So.2d 1002, 1003 (Fla. 3d DCA 1997) (concluding that "[T]here is no question that the clause which voids coverage if the insured makes an intentional misrepresentation `after a loss'that is, as here, in making a claim is valid and enforceable."). We recognize that this is a harsh result but we are constrained by established supreme court precedent to so hold. We therefore conclude that the Schneers' fraudulent contents claim voided their homeowner's policy with Allstate in its entirety. Pursuant to the terms of the policy, however, the Schneers are entitled to the return of all premiums paid for this policy minus the amount initially advanced to them by Allstate for the hurricane damage as conceded by Allstate on this appeal and we remand this cause for this purpose.
For the foregoing reasons, we affirm the judgment under review but remand with directions.
Affirmed with directions.
SCHWARTZ, Chief Judge (dissenting in part).
I agree that the plaintiffs' proffered expert testimony was properly excluded below. I strongly disagree, however, with the substantive holding that the structure and contents coverages are not severable in the present circumstances.
First, I think the majority is simply wrong in concluding that its holding on this point is required by binding precedent of the Supreme Court of Florida. To the contrary, the only Supreme Court holding on the related point is that "[i]n the absence of misrepresentations and fraud," separate coverages are indeed severable. National Union Fire Ins. Co. v. Cubberly, 68 Fla. 253, 259, 67 So. 133, 134 (1914); Hartford Fire Ins. Co. v. Hollis, 64 Fla. 89, 59 So. 785 (1912); American Reliance Ins. Co. v. Kiet Inv., Inc., 703 So.2d 1190 (Fla. 3d DCA 1997). Since these statements do not suggest what the result would be if fraud did exist, they cannot be regarded even as achieving the lofty heights of nonbinding dicta, which at least requires some indication of a preferred conclusion (although expressed on an issue which was not presented or was not necessary to the result).
Properly considering the issue, then, as one of first impression in this state, I think, as I broadly (but apparently not broadly enough) hinted in what was clearly dictum in Wong Ken v. State Farm Fire & Casualty Co., 685 So.2d 1002, 1004, n. 1 (Fla. 3d DCA 1997):
1. Unlike many of the non-severability holdings referred to by the majority, the Allstate policy before us does not expressly provide that a fraudulent claim voids the "entire policy" or "all claims." 44 Am. Jur.2d. Insurance § 1371, at 301 (1982). As a matter of the simple rule of policy interpretation against the carrier, see Stuyvesant Ins. Co. v. Butler, 314 So.2d 567 (Fla.1975), therefore, structure coverage must be regarded as severable from a *491 contents claim so that the fraud may be attributed only to the latter. Kerr v. State Farm Fire & Casualty Co., 731 F.2d 227 (4th Cir.1984)(applying rule of severability); Claxton v. Fidelity & Guaranty Fire Corp., 179 Miss. 556, 175 So. 210 (1937)(same); Johnson v. South State Ins. Co., 288 S.C. 239, 341 S.E.2d 793 (1986)(same); Tempelis v. Aetna Casualty & Surety Co., 169 Wis.2d 1, 485 N.W.2d 217 (1992)(same).
2. Because, again in contrast to most of the cited decisions by the majority, which are merely insureds' claims on the policies, this case involves a counterclaim for recission of the entire contract, the $50,000 fraud as to the contents claim should not be considered a material or substantial breach in light of all the amounts involved, so as to justify granting that acknowledgedly harsh remedy. Gittlin Cos., Inc. v. David & Dash, Inc., 390 So.2d 86, 86 (Fla. 3d DCA 1980); see Cenal v. Jaramillo, 576 So.2d 418 (Fla. 3d DCA 1991).
The court's decision means that the insureds must returnread "forfeit"all of the sums for which they duly paid premiums and to which they were entitled for their structure claim, including the $3,500 paid by the carrier for the emergency repairs and expenses created by Hurricane Andrewall because very much later, they made an improper claim for entirely different damages. Since there is, and should be, nothing in the law that compels us to reach this patently unjust result,[7] I would not do so.

ON JOINT MOTION FOR DISMISSAL
PER CURIAM.
After this case was set for rehearing en banc of the May 17, 2000 majority decision affirming the judgment below, the parties entered into a stipulation for the settlement of the case and have jointly moved for the entry of an order of dismissal without retaining jurisdiction for the purpose of issuing any further opinions. Upon the observation, which would be self evident in any case, that this disposition implies nothing concerning the en banc court's view of the merits, we exercise our discretion, see State v. Schopp, 653 So.2d 1016 (Fla.1995), to recognize the stipulation and grant the motion for dismissal of the proceeding. The order setting the cause for argument en banc is vacated.
Appeal dismissed.
NOTES
[1] The relevant portions of the proffer of Porter's testimony is as follows:

THE WITNESS: My name is William Porter, full name, initial L. William Porter.
And although I do hold a doctorate degree, and I appreciate it, I am actually just a lawyer ...
MS. CURRAN [plaintiffs' counsel]: Now, you have looked at those proof of claim forms?
THE WITNESS: Yes, ma'am.
MS. CURRAN: And what other materials have you looked at in regard to this claim?
THE WITNESS: In the course of the last year or so, I've read depositions, deposition transcripts; I have read transcripts of statements given to the insurance carrier under oath; I have read pleadings and papers of record; I've reviewed documents, these documents; and very likely, no doubt, other supporting documentation on this loss ...
MS. CURRAN: Have you also looked at photographs in this case?
THE WITNESS: Yes, ma'am, and engineering reports as well and sets of photographs that were pretty clear to me taken by either side in this case.
MS. CURRAN: Do you remember or do you have anything that reflects what engineering reports you have been furnished?
THE WITNESS: I don't know off the top of my head.
There were two of them, and it seemed clear to me that they were prepared for the opposing viewpoints in this case.
MS. CURRAN: Okay. Fair enough.
Let me put it to you this way. What opinions do you have in this case?
THE WITNESS: My opinion, as based upon my experiences of Fraud Investigator Administrator and Law Enforcement Commander of the Insurance Fraud Unit is that this case is absolutely nothing more than an adjusting dispute over some casualty losses after Hurricane Andrew. And I don'thave not seen, in my opinion any evidence of any fraud whatsoever.
MS. CURRAN: Okay. Okay. Can you give me the parameters, guidelines, or whatever it is that an Insurance Fraud Adjuster uses in order to make a determination of whether or not there is insurance fraud?
THE WITNESS: Well, Florida Statute 817.234 gives us a good place to start, I guess, and that is that any person who, with criminal intent, submits to an insurance carrier information in support of a claim for loss which is a false, misleading, or incomplete statement, they would have fallen into a category, at the very least, at the threshold of possibly having committed a criminal insurance fraud or third degree felony.
A civil fraud, the kind that would be aired in this Courthouse, would be, basically the samethe same parameters with, perhaps, a different standard, and it requires the intentional submission of incomplete, false, and misleading statements to support a claim for insurance benefits.
And, again, I have not seen that in this case.
MS. CURRAN: Assume that Mr. and Mrs. Schneer submitted Exhibit 1, that is, a contents claim, in the amount of $67,000 and attached the attached inventory list.
THE WITNESS: Yes, ma'am.
MS. CURRAN: Assume that later on, they reduced the contents claim by, approximately $40,000.
THE WITNESS: Yes, ma'am.
MS. CURRAN: Is that a fraudulent act?
THE WITNESS: No, ma'am.
MS. CURRAN: Why? Why not?
THE WITNESS: Well I guess at the bottom line, that is why they call it adjusting....
It is not fraud to submit a proof of loss and then await the company to investigate and give its position[.] ...
MS. CURRAN: Okay, I think that's about all I intent to use this witness for.
[2] The parties also stipulated that Allstate's claims for rescission and breach of contract in its counterclaim would be resolved by the court after the jury's verdict.
[3] Section 90.702 provided in relevant part that:

If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.
[4] Charles W. Ehrhardt, Florida Evidence § 703.1 (2000).
[5] See Collins v. USAA Prop. and Cas. Ins. Co., 580 N.W.2d 55 (Minn.Ct.App.1998); Mutual of Enumclaw Ins. Co. v. Cox, 110 Wash.2d 643, 757 P.2d 499 (1988); Home Ins. Co. v. Hardin, 528 S.W.2d 723 (Ky.Ct.App.1975); but see Kerr v. State Farm Fire & Cas. Co., 731 F.2d 227 (4th Cir.1984); Johnson v. South State Ins. Co., 288 S.C. 239, 341 S.E.2d 793 (1986).
[6] See, e.g., Bowman v. Franklin Fire Ins. Co. of the City of Baltimore, 40 Md. 620 (1874); Friesmuth v. Agawam Mut. Fire Ins. Co., 64 Mass. 587 (1852); Plath v. Minnesota Farmers' Mut. Fire Ins. Ass'n, 23 Minn. 479 (Minn. 1877); Henricksen v. Home Ins. Co., 237 Or. 539, 392 P.2d 324 (1964); Moore v. Virginia Fire & Marine Ins. Co., 69 Va. 508, 28 Gratt. 508 (1877); Mosrie v. Automobile Ins. Co. of Hartford, 105 W.Va. 226, 141 S.E. 871 (1928); see also Johnson, 341 S.E.2d at 795 (acknowledging that "[a]n overwhelming majority of jurisdictions hold that any fraud or misrepresentation as to any portion of property under an insurance policy voids the entire policy").
[7] I believe the court's decision on this point may be another example of the process described by Cardozo and referred to in Doctor v. State, 677 So.2d 1372, 1373-74 (Fla. 3d DCA 1996)(Schwartz, C.J., specially concurring), approved, 683 So.2d 162 (Fla. 4th DCA 1997).