368 So.2d 404 (1979)
PLACET, INC., a Minnesota Corporation, Raymond J. Esser and Richard I. Jensen, Appellants,
v.
Jon ASHTON, Appellee.
No. 78-974.
District Court of Appeal of Florida, Third District.
February 27, 1979.
Rehearing Denied March 30, 1979.
*405 Kenneth B. Sherouse, Jr., Miami, for appellants.
Gelb & Spatz and Carl A. Spatz, Miami, for appellee.
Before BARKDULL, HUBBART and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Placet, Inc., Raymond J. Esser, and Richard I. Jensen appeal from a final money judgment entered against them and in favor of Jon Ashton, after a three day nonjury trial. Ashton cross-appeals as against *406 Placet, Inc. alone. We find no error on the main appeal, but reverse as to the cross-appeal.
The trial judge entered extensive findings of fact and conclusions of law which ably describe both the legal and factual issues involved below and the court's resolution of those issues:
"1. In 1961 JON ASHTON commenced the business of designing and manufacturing architectural planters and accessories, doing business individually under the trade name "PLACET". Said business was incorporated in the State of Minnesota in 1965 and eventually after one or more name changes became known as PLACET, INC., a Minnesota corporation. From 1965 until 1973 PLACET, INC., engaged in business in the State of Minnesota with its principal place of business located in the City of Minneapolis. Its principal business was the manufacture of planters, accessories, and furniture made out of plastic materials. In 1973 PLACET, INC., a Minnesota corporation, moved its entire operation to the City of Princeton in Dade County, Florida.

* * * * * *
3. During the year 1974 ASHTON commenced discussions with an agent of RICHARD I. JENSEN and RAYMOND J. ESSER concerning the purchase of the stock of PLACET, INC., a Minnesota corporation, by ESSER and JENSEN ...

* * * * * *
5. In early March of 1975 a telephone conversation took place between ESSER and JENSEN and ASHTON at which time ESSER and JENSEN offered to purchase all of the stock of PLACET, INC., a Minnesota corporation, for $100,000.00, payable $10,000.00 down with the balance in monthly installments of $1,200.00. In addition, ASHTON would be employed by the corporation for seven (7) years under a written employment contract. ASHTON accepted the offer and he was advised by ESSER and JENSEN to come to Minneapolis, Minnesota to close the deal. ASHTON was further told by ESSER and JENSEN that he did not need an attorney inasmuch as ESSER had a brother who was a lawyer and who would prepare the papers without cost. ASHTON was told by ESSER and JENSEN that they would have papers drawn and ready when he got to Minneapolis according to the oral agreement. ASHTON did not consult an attorney.
6. ASHTON arrived in Minnesota on March 13, 1975 and went to the apartment of ESSER and JENSEN to close the sale. All instruments incident to the closing were prepared by ESSER and JENSEN, and they were as follows:
(a) An Employment Agreement between PLACET, INC., a Minnesota corporation, and JON ASHTON wherein and whereby ASHTON was employed for the seven year period from April 1, 1975 through March 31, 1982, with ASHTON to receive thereunder a draw of $3,000.00 per month against 5% of the net sales sold by the corporation.
(b) A "Hold Harmless and Indemnity" Agreement running from JON ASHTON to RAYMOND J. ESSER and RICHARD I. JENSEN wherein and whereby ASHTON agreed to hold ESSER and JENSEN harmless from liability from any undisclosed taxes or other liabilities.
(c) An "Expense Agreement" which as drawn provided for payment to ASHTON of $1,200.00 per month for expenses. In paragraph 2 of the "Expense Agreement" RAYMOND J. ESSER and RICHARD I. JENSEN are referred to as the buyers of PLACET, INC.
7. ASHTON was told that ESSER and JENSEN wanted to pay for the stock purchase in the form of expenses to be paid under the "Expense Agreement"; ASHTON had no objection. The "Expense Agreement" was changed by ESSER by interlineation to read that ASHTON would receive "Four Thousand Dollars ($4,000.00) per month for the first three (3) months and 73 1/3 months at $1,200.00 per month for a total of $100,000.00." The Court finds that said $100,000.00 to be paid under said Expense Agreement was intended to evidence payment for ASHTON'S stock and was not intended to be true "expenses". *407 The Court further finds that said $100,000.00 obligation was intended to be unconditional and not dependent upon whether or not ASHTON was an employee of the corporation in the future.
8. The papers were signed that day and copies given to ASHTON. In addition, that same day ASHTON paid DONALD SCHNOBRICK, the owner of 11% of the PLACET, INC. stock, $11,000.00 in order to free up the stock. At the closing on March 13, 1975, ASHTON demanded that ESSER and JENSEN execute a Promissory Note evidencing the $100,000.00 obligation for his stock. They promised to give him one, and a Note signed by ESSER and JENSEN and PLACET, INC. was subsequently delivered to ASHTON. The Court finds that it was the agreement of the parties and ASHTON was led to believe by ESSER and JENSEN that he was, in fact, selling his stock in PLACET, INC., a Minnesota corporation, for the sum of $100,000.00 and that said $100,000.00 payment was unconditional and would be paid in installments of $4,000.00 for three (3) months and then $1,200.00 for 73 1/3 months and that said obligation would be evidenced by an unconditional Promissory Note. In fact, the Promissory Note, as drafted by ESSER and JENSEN, referred to the Employment Agreement and Expense Agreement, and the Expense Agreement provided that it would be in full force and effect for the period of time contained in the Employment Agreement. The Court finds that the said "Expense Agreement" and Promissory Note as drafted by ESSER and JENSEN were ambiguous and that the true intention of the parties was that ASHTON would be paid $100,000.00 for the stock in the installments set forth in the "Expense Agreement" and that in the event of default, ASHTON could sue for the unpaid balance.
9. The Court finds that ESSER and JENSEN represented to ASHTON that they would draft the closing papers in accordance with the parties' oral agreement for sale and during the closing meeting in ESSER and JENSEN's apartment in Minnesota, they represented to ASHTON that the papers were so drawn. The Court finds that the legal nuances in the note and "Expense Agreement" which tied the note and Expense Agreement to the Employment Agreement were beyond the comprehension of anyone not trained in the law. The Court finds that the parties did not as maintained by ESSER and JENSEN agree that ASHTON was selling his stock to ESSER and JENSEN for $1.00. The evidence is clear and convincing that either the note and Expense Agreement did not reflect the true intent and agreement of the parties in respect to making the payment of the $100,000.00 dependent upon ASHTON's continued employment or in the alternative, if ESSER and JENSEN intended in drawing the closing papers that the payment of the $100,000.00 to ASHTON be dependent upon his continued employment, then their actions were clearly fraudulent as to ASHTON.

* * * * * *
11. ESSER and JENSEN took over as sole stockholders of PLACET, INC., a Minnesota corporation, doing business in Princeton, Florida on April 1, 1975, and ASHTON commenced his duties under the Employment Agreement and he continued under said Employment Agreement until approximately September 8, 1975 at which time ASHTON was fired. The Court finds that PLACET, INC., a Minnesota corporation, failed to sustain the burden of proving that PLACET, INC., was justified in terminating the employment of JON ASHTON under the terms and provisions of the Employment Agreement entered into between the parties.
12. At the time of ASHTON's discharge on or about September 8, 1975, two $4,000.00 payments for April and May of 1975 had been made on the $100,000.00 Promissory Note with no further payments being made thereon and that ASHTON had been paid draws against commissions in the sum of $3,000.00 for the months of April, May and June of 1975 and none for any time thereafter. The Court finds that there is due and owing to ASHTON under the Promissory Note and "Expense Agreement" *408 the principle sum of $92,000.00, plus interest from June 1, 1975. In addition, under the Employment Agreement ASHTON would have been entitled to 5% of the net sales of the corporation from April 1, 1975 to date of trial, less $9,000.00 paid to ASHTON for draws against commissions; however, no evidence of the amount of net sales was presented at trial.

* * * * * *

CONCLUSIONS OF LAW
1. That the Promissory Note dated March 17, 1975 must be read together with the "Expense Agreement" dated March 13, 1975 and said instruments evidence the agreement and obligation of RAYMOND J. ESSER and RICHARD I. JENSEN and PLACET, INC., a Minnesota corporation, to pay the sum of $100,000.00 to JON ASHTON for the sale of his stock to ESSER and JENSEN.
2. That RAYMOND J. ESSER and RICHARD I. JENSEN are individually liable under the Promissory Note dated March 17, 1975. ESSER and JENSEN failed to rebut the presumption of liability from the manner of signature appearing on said Note. There being no evidence presented on the issue of attorney's fees, the claim for such fees must be denied. Lyle v. Lyle, 167 So.2d 256 (Fla.2d DCA 1964), cert. denied, 172 So.2d 601 (Fla. 1964).
3. That although grounds exist for the reformation of said Promissory Note and "Expense Agreement" so as to make the payments of the $100,000.00 independent of ASHTON's continued employment by PLACET, INC., the Court finds that reformation of said Note and agreement for this purpose is unnecessary by virtue of the fact that ASHTON's Employment Agreement was wrongfully and unjustifiably terminated by PLACET, INC. Because of said wrongful discharge, the Note and Employment Agreement are fully enforceable as they read.
4. The Court does, however, conclude that the Note and "Expense Agreement" under the evidence should be reformed so as to provide for acceleration of the debt upon default.
IT IS THEREUPON:
ORDERED AND ADJUDGED AS FOLLOWS:
1. That Judgment be, and the same is, hereby entered in favor of JON ASHTON and against PLACET, INC., RAYMOND J. ESSER, and RICHARD J. JENSEN on Plaintiffs' Complaint.
2. That the Promissory Note dated March 17, 1975 and the "Expense Agreement" dated March 13, 1975 be, and they are, hereby reformed so as to provide for acceleration in the event of default.
3. That Final Judgment be, and the same is, hereby entered in favor of JON ASHTON and against PLACET, INC., a Minnesota corporation, RAYMOND J. ESSER, and RICHARD I. JENSEN, jointly and severally, for the sum of $92,000.00 plus interest at 6 percent per annum from June 1, 1975 to date in the sum of $14,720.00, for which let execution issue."
The first point raised on the "main appeal" is presented only by Esser and Jensen as individuals. It claims error in the trial court's determination that they are personally liable on the "promissory note" in question and, contrariwise, that they did not execute the note merely as representatives of the corporation. The document was signed in the following manner:
 "Placet, Inc.  Ray Esser
 Richard Jensen."
The parties agree that Section 673.3-403, Florida Statutes (1975) is applicable. It provides:
"(2) An authorized representative who signs his own name to an instrument:
* * * * * *
(b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity ..."
Nor is it disputed that, under this provision, and since the action was between the immediate parties to the agreement, parol evidence *409 as to the capacity in which Esser and Johnson signed the instrument was properly admitted at the trial. E.g., Havatampa Corp. v. Walton Drug Co., Inc., 354 So.2d 1235 (Fla.2d DCA 1978), and cases cited. The individual appellants argue, however, that their own testimony that they executed the "note" only as representatives of Placet Inc. established that that was the case as a matter of law. We find no merit in this contention. The record contains ample testimony, much of it summarized in the final judgment itself, which supports the conclusion that the parties understood and agreed that Esser and Johnson were to be individually liable. We therefore cannot interfere with the trial court's resolution of this disputed issue below. E.g., Strawgate v. Turner, 339 So.2d 1112 (Fla. 1976).
We reach the same conclusion in rejecting the appellants' second point, which contends that the trial judge erroneously concluded that the parties were "unconditionally" liable to pay Ashton $100,000.00 for his stock. It is again apparent that the trial court's determination to this effect was well-supported by a view of the evidence concerning the relationships between the parties and the various documents they executed, in the light of all the surrounding circumstances, which the court had a right to accept. Popwell v. Abel, 226 So.2d 418 (Fla.4th DCA 1969); Royal American Realty, Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla.4th DCA 1968); Hurwitz v. C.G.J. Corp., 168 So.2d 84 (Fla.3d DCA 1964); 7 Fla. Jur., Contracts, §§ 78-80.
The appellants' final point, and Ashton's only one on the cross-appeal, both concern the employment agreement to which the corporation, Placet, Inc. and Ashton were the only parties. The agreement was for a seven year term from April 1, 1975 to March 31, 1982. It contained the following termination clause:
"7. TERMINATION: If the employee shall fail to perform or shall unlawfully perform his duties as salesman, or any other duties for the employer or shall fail to attend to his regular duties for a period of 30 days exclusive of the time away from his duties by reason of vacation, illness, disability, or leave with permission of the employer, then the employer may, at its option, terminate the employee and he shall no longer be entitled to the compensation as set forth in Paragraph 2 of the agreement ..."
The appellants claim that they may not be held liable for a breach of this agreement[1] since they acted in "good faith" in firing Ashton. Once more, we cannot accept this contention. Unlike the situations presented in the cases cited by the appellants, e.g., Paddock v. Bay Concrete Industries, Inc., 154 So.2d 313 (Fla.2d DCA 1963), in which an employee was required to perform in a manner "satisfactory" to his employer, Ashton could be properly terminated under the agreement in question only if he had breached its provisions. Haiman v. Gundersheimer, 130 Fla. 109, 177 So. 199 (1937). Since the record, again, fully supports the factual finding that Ashton had not done so and was therefore wrongfully discharged, the trial judge's conclusion to this effect cannot be disturbed.
Despite this conclusion, the trial court denied Ashton any recovery against Placet, Inc. for breach of the employment agreement itself. We think that his challenge to this ruling on cross-appeal is well taken. Under the agreement, Ashton was to receive
"... a salary of 5 percent of the net sales sold by the corporation, said employee to have a drawing account of Three Thousand ($3,000.00) Dollars per month against the 5 percent commission . ."
The basis of the lower court's ruling denying Ashton compensation was that he had not demonstrated the amount of the corporation's "net sales" so as to compute the five percent salary to which he was entitled. *410 While this is true,[2] the contract provision for a $3,000 monthly drawing account against the five percent is nevertheless enforceable. We adopt the majority view that such a provision constitutes, in effect, a guaranty that the amount of the drawing account will be paid whether the percentage commission is earned or not. Gifford v. Waters, 67 N.Y. 80 (1876); cases collected in Annot., Liability of Employer for Agreed Advances, 95 A.L.R.2d 504, 505-510, 513-514 (1964). Since the court has held that Placet's firing of Ashton was in violation of its employment agreement and since it constituted an anticipatory breach of the entire agreement, it follows that Ashton is entitled to recover from Placet, Inc., the discounted value of $3,000 per month due from the date of his discharge on September 8, 1975 until the end of the contract term, March 31, 1982. Hazen v. Cobb, 96 Fla. 151, 117 So. 853 (1928). The final judgment, which is otherwise affirmed, is reversed only to this extent, and the cause is remanded with directions to enter an additional judgment against Placet, Inc. alone for this amount.
Affirmed in part, reversed in part and remanded.
NOTES
[1] And therefore that they should not be held under the "note into which the terms of the employment agreement were incorporated both by the terms of the document itself and under the ruling of the trial judge.
[2] We find no error in the court's refusal to bifurcate the trial so as to give Ashton a further opportunity to present such proof.