764 So.2d 770 (2000)
COUNTY OF VOLUSIA, Appellant/Cross-Appellee,
v.
James A. KEMP, Appellee/Cross-Appellant.
No. 5D99-1220.
District Court of Appeal of Florida, Fifth District.
July 14, 2000.
Rehearing Denied August 15, 2000.
*771 Jeffrey E. Mandel and Benton N. Wood of Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Orlando, for Appellant/Cross-Appellee.
David A. Vukelja of David A. Vukelja, P.A., Ormond Beach, for Appellee/Cross-Appellant.
SAWAYA, J.
The appellant, Volusia County, appeals the final judgment entered against it following a jury trial in which appellee, James Kemp, prevailed in a malicious prosecution suit brought pursuant to 42 U.S.C. § 1983. Volusia County contends that the trial court erred (1) in denying its motion for a directed verdict on the malicious prosecution claim; (2) in allowing certain opinion testimony from an expert witness; and (3) in denying its motion for a directed verdict on Kemp's claim for lost earnings. Kemp cross-appeals the court's partial grant of Volusia County's motion for remittitur of the jury's award of damages for Kemp's future diminished earning capacity. Finding merit only in Volusia County's argument that the trial court erred in allowing certain expert testimony, we reverse on that ground. Therefore, the cross-appeal is moot.

A. Facts
Kemp filed his malicious prosecution action against Volusia County[1] after being acquitted on a felony charge of conspiracy to smuggle gold. The acquittal stemmed largely from what Kemp asserts are questionable practices used by the deputies who gathered the information leading to the charge. Kemp attacked these practices at the malicious prosecution trial by offering a witness as an expert in the area of the application of constitutional principles to law enforcement. After the trial court accepted the witness as an expert in this area, the expert proceeded to outline *772 certain constitutional principles from which standards have been adopted that govern the conduct of law enforcement officers in the exercise of their official duties. For example, he testified that an investigator or police officer would not be permitted to: (1) exaggerate findings for the purpose of securing an arrest; (2) falsify facts for the purpose of securing an investigation or indictment; (3) hide or delete exculpatory information for the purpose of securing an investigation or indictment; or (4) inject their opinion or conclusions with regard to their observations. He also testified that the purpose of a supervisor is to review the work including reports produced by police officers to ensure that these standards have been complied with and to specifically ensure that ambiguous information is not included in police reports for the purpose of suggesting criminal activity.
The expert testified that in preparation for his testimony, he reviewed the transcript of the criminal trial that resulted in Kemp's acquittal; the complaint in the underlying civil case; and numerous depositions, transcripts of testimony, tape recordings, and reports by the defendants and other investigators. He explained that he was asked to conduct this review by Kemp's attorney to determine if he "had an opinion about the constitutional conduct of the investigation or whether, in other words, the investigation and presentation to the United States Attorney's office for indictment met constitutional standards."
The expert was then allowed to testify at length concerning the findings he made from his review of all of these records. During parts of his testimony, he either repeated what the records stated, recounted what he remembered reading in them, revealed what he "gleaned" from them, or stated his understanding of what the records revealed. During other parts of his testimony, he was permitted to give his interpretation of what he thought portions of the reports and documents meant and on other occasions, he was allowed to speculate or infer what they might mean to others. He was also allowed to give his opinion that from the records he reviewed, he observed "not one shred of evidence" of criminal activity by Kemp.
For example, at one point in his testimony, the expert rendered an opinion that a tape-recorded conversation between Kemp and Page was nothing more than "shooting the breeze." During this conversation, Kemp discussed, among other things, gold worth $54 million and that one would have to steal it from the Bahamian government and smuggle it into this country. The expert explained that
when you shoot the breeze, there is virtually no limits to the kind of conversations that an FBI agent, police officer have with each other, including the discussion of how to commit the perfect crime, for example. I've participated in those kinds of conversations myself. Shooting the breeze sets a rather wide parameter about the seriousness of conversation in the opposite direction, that if you're shooting the breeze it's not a serious conversation.
Later in his testimony, the expert concluded that because Page did not indicate that the conversation with Kemp ever changed from "shooting the breeze," the "entire conversation was a shooting the breeze conversation and not a criminal conversation or not a serious conversation."
The expert was allowed to make a comparison between the reports of Deputies Page and Buscher and their testimony during the criminal trial and point out what he thought were discrepancies. He was even allowed to present a schematic that he prepared showing what he claimed were discrepancies in the verbal reports, written reports and taped conversations of the deputies. The direct examination of the expert concluded with his opinion that Deputies Page and Buscher did not meet constitutional standards in their conduct of the investigation and that Sheriff Vogel's supervision did not meet minimum constitutional *773 standards. Finally, in response to questions regarding whether the conduct of Buscher, Page and Vogel caused or contributed to the United States Customs Service investigation and the indictment and prosecution of Kemp by the U.S. Attorney's office, the expert rendered his opinion that these defendants "knew or should have known" that the U.S. Attorney would rely on their reports and conduct.

B. Legal Analysis
The standard of review for trial court decisions concerning the qualifications of expert witnesses and the scope of their testimony is abuse of discretion. See Town of Palm Beach v. Palm Beach County, 460 So.2d 879 (Fla.1984); Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47 (Fla. 4th DCA 1994); see also Angrand v. Key, 657 So.2d 1146, 1148 (Fla.1995) ("A trial court is to be afforded broad discretion in determining the subject on which an expert may testify in a particular trial. The trial court's decision will only be disregarded if that discretion has been abused.") (citations omitted).
An expert may render an opinion on the ultimate issue in a case. See § 90.703, Fla. Stat. (1999); Town of Palm Beach. This rule, however, does not automatically allow admission of all expert testimony. See Town of Palm Beach; Fino v. Nodine, 646 So.2d 746 (Fla. 4th DCA 1994). In order to admit expert testimony, the trial court must determine that the expert testimony will assist the trier of fact "in understanding the evidence or in determining a fact in issue." § 90.702, Fla. Stat. (1999); see Angrand; Fino. If expert testimony merely relays matters that are within the common understanding of the jurors or tells the jury how to decide the case, it should not be admitted. See Angrand; Town of Palm Beach; Fino.
Furthermore, an expert should not be allowed to render an opinion which applies a legal standard to a set of facts. See Town of Palm Beach; Gurganus v. State, 451 So.2d 817 (Fla.1984); Smith v. Martin, 707 So.2d 924 (Fla. 4th DCA 1998); Christian v. State, 693 So.2d 990 (Fla. 1st DCA 1996), quashed on other grounds, 692 So.2d 889 (Fla.1997); Gulley v. Pierce, 625 So.2d 45 (Fla. 1st DCA 1993); Shaw v. State, 557 So.2d 77 (Fla. 1st DCA 1990); cf. Brescher v. Pirez, 696 So.2d 370, 374 n. 2 (Fla. 4th DCA 1997) ("The appellee asserts that ... the court and the jury were entitled to rely on the testimony of a former police chief who rendered an `expert' opinion that the officers did not have probable cause to believe that a felony was being committed. As we note, the existence of probable cause is an issue of law for the court, not for expert witnesses, to decide.") (citation omitted). In addition, expert testimony should be precluded if its probative value is outweighed by the danger of unfair prejudice. See § 90.403, Fla. Stat. (1999); Zecchino v. State, 691 So.2d 1197 (Fla. 4th DCA 1997); see also LaVillarena, Inc. v. Acosta, 597 So.2d 336 (Fla. 3d DCA 1992).
In Smith v. Martin, for example, the jury found that the appellant was grossly negligent when he ran over a co-worker in the employer's truck. The court reversed because the trial court erroneously allowed the opinion of an expert witness that attributed gross negligence to the appellant. The court held that this was clearly an issue for the jury, not for an expert's opinion. The court noted that the danger of admitting this type of evidence is that the jury may bow too readily to the opinion of the expert and "forego independent analysis of the facts." 707 So.2d at 925. The court also found that "the error of admitting the expert's opinion on what facts established gross negligence was particularly likely to influence the juries' decision." Id.
Similarly, in the instant case, the expert witness rendered an opinion which applied a legal standard to a set of facts when he told the jury that the defendant's conduct was unconstitutional. This is clearly a question for the jury to resolve, not an expert witness. Furthermore, the expert was allowed to inject his own interpretation *774 of the reports, depositions and trial testimony of the defendants in the criminal trial and based his ultimate opinion on those findings. This testimony did not assist the jury in deciding the issues in the case because the jury was fully capable of determining for itself what the reports meant and whether there were discrepancies between the reports and between the reports and the testimony presented during the criminal trial. Thus allowing the expert witness to give his opinion regarding what he thought were conflicts in the reports and testimony invaded the province of the jury. Furthermore, this testimony was highly prejudicial and certainly unduly influenced the jury in arriving at its verdict. In essence, the expert witness directed the jury to render a conclusion that it should have been free to arrive at independent from his interpretations of the reports and testimony of the defendants and his opinion whether their conduct in the investigation was unconstitutional.
We, therefore, find that the trial court abused his discretion in allowing such a broad scope of expert testimony in this case.
REVERSED and REMANDED for a new trial.
THOMPSON, C.J., and PETERSON, J., concur.
NOTES
[1] Other defendants included Sheriff Vogel, Sheriff of Volusia County, and his deputies, Page and Buscher. However, directed verdicts were entered in their favor by the trial court.