LAGOA, J.
The Plaintiff/Appellant, L.B., appeals from a final judgment entered in favor of her employer, The Naked Truth III, Inc., on her claim for negligent security. We address two of the five issues L.B. raises on appeal as they are interrelated. However, because we are reversing and remanding for a new trial, we do not address the remaining issues raised on appeal.
I. FACTUAL AND PROCEDURAL BACKGROUND
L.B. worked as a sales clerk at an adult retail store owned by The Naked Truth, III, Inc. (the “Store”). On December 25, 2007, L.B. worked the overnight shift from midnight to 8:00 a.m. for a coworker. Only one sales clerk was assigned to work this shift. The Store’s security included, among other things, cameras, both inside and outside the Store, which could be viewed on monitors; extensive indoor and outdoor lighting; a locked front door which the sales clerk could open by a buzzer; and a panic alarm which could be activated by pressing a button under the counter.
At about 5:30 a.m., L.B. buzzed in a male customer who then walked to the back of the Store where the movies and viewing booths were located. Suddenly, the male customer appeared at the cashier’s counter brandishing a gun. He ordered L.B. to give him the money from the register and the safe, and then directed L.B. to lie on the floor. He then raped her. After he left, L.B. pressed the panic alarm and called 911 on her cellular phone.
Investigations revealed that four prior armed robberies had occurred at the Store during the overnight shift, the last one only two months before the attack on L.B. None of these incidents involved a sexual assault. Jose McCray (“the assailant”), who lived about twenty-two miles from the *1116 Store, was identified as the assailant. L.B. did not know the assailant; however, a coworker, Xavier Powell, stated that about three days prior to the attack, the assailant had come into the Store and asked for L.B. The coworker told the assailant that L.B. no longer worked the overnight shift.
L.B. sued the Store alleging negligent security. Both parties retained experts to testify regarding the Store’s security. Plaintiffs expert, Rosemary Erickson, Ph. D., opined that the Store failed to implement sufficient security measures after the prior armed robberies and that the rape was a crime of opportunity that was foreseeable and preventable. Defendant’s expert, Gregg McCrary, testified that the attack was a “victim-targeted” crime which was unforeseeable and unpreventable by any security measures. He also testified that the security measures in place at the Store were reasonable.
Prior to trial, the judge denied L.B.’s motion to limit the testimony of McCrary, and to exclude Powell’s testimony regarding the assailant’s inquiry about L.B.
Ultimately, the jury returned a verdict finding no negligence. The trial court subsequently denied L.B.’s motion for a new trial, and this appeal followed.
II. ANALYSIS
A. The Trial Court Abused its Discretion in Admitting the Testimony of the Store’s Security Expert that this was a “Victim-Targeted” Crime
L.B. asserts that the trial court erred in admitting the testimony of the Store’s security expert, McCrary, that this was a “victim-targeted” crime.[1] Specifically, L.B. asserts that McCrary’s testimony was speculative because it was based upon hearsay, and constituted inadmissible testimony as to “motive” pursuant to Smithson v. V.M.S. Realty, Inc., 536 So.2d 260 (Fla. 3d DCA 1988). The Store also cites to Smithson as support for its position that the testimony admitted was proper.
In Smithson, Smithson, a mall theatre manager, was murdered while he attempted to make a night deposit at a mall bank. The surviving wife sued the mall owners alleging inadequate security. The jury returned a defense verdict, and plaintiff appealed. Plaintiff argued that the trial court erred in permitting defendant’s expert to testify regarding the robbers’ motive for choosing to rob Smithson. As in the instant case, the plaintiff contended that the expert relied on inadmissible and prejudicial hearsay testimony. There the expert interviewed the assailants and, in testifying, recited their explanation of the plan and motive for committing the crime.
The Smithson court stated:
The purpose of expert testimony is to “assist the trier of fact in understanding the evidence, or in determining a fact issue ...,” § 90.702, Fla. Stat. (1985), but “expert testimony is not admissible at all unless the witness has expertise in the area in which his opinion is sought.” Husky Indus., Inc. v. Black, 434 So.2d 988, 992 (Fla. 4th DCA 1983). The witness was qualified to render an opinion on security matters and on the defendant’s allegedly negligent security procedures, but not on the robbers’ motives for choosing Mr. Smithson as their target. The reasoning behind the cocon-spirators’ conduct is a matter beyond the scope of his expertise.
*1117 Smithson, 536 So.2d at 262 (citations omitted). L.B. points to this portion of the opinion in support of her argument that defendant’s expert testimony was inadmissible. L.B. contends that this Court already has determined that this type of evidence is not admissible in negligent security cases.
The Store distinguishes Smithson based on this Court’s statement that, “Although an expert witness is entitled to render an opinion premised on inadmissible evidence when the facts and data are the type reasonably relied on by experts on the subject, ... the witness may not serve merely as a conduit for the presentation of inadmissible evidence.” Id. at 261-62 (citations omitted). The Store argues that here the expert was not merely a conduit for inadmissible evidence because Powell testified that the assailant asked for L.B. a few days before the attack. Therefore, although McCrary relied on this statement to arrive at his opinion, the statement was not introduced solely through the expert’s testimony.
The Store’s reading of Smithson, however, is incorrect. This Court in Smithson further held that “[wjhere the expert’s actual opinion parallels that of the outside witness, then the outside witness should be produced to testify directly.” Id. at 262 (quoting Sikes v. Seaboard Coast Line R.R., 429 So.2d 1216, 1222 (Fla. 1st DCA 1983)). Powell testified at trial that the assailant asked for L.B. a few days prior to the attack. As such, it was unnecessary for the security expert to opine on this matter.
Moreover, as previously noted, admitting McCrary’s testimony on the issue of whether this was a victim targeted crime is contrary to this Court’s ruling in Smithson. As in Smithson, McCrary “was qualified to render an opinion on security matters and on the defendant’s allegedly negligent security procedures, but not on the [assailant’s] motives for choosing [L.B.] as [his] target. The reasoning behind the [assailant’s] conduct is a matter beyond the scope of his expertise.” Smithson, 536 So.2d at 262. Accordingly, based on the authority of Smithson, we find that the trial court abused its discretion in admitting McCrary’s opinion that this was an unforeseeable victim-targeted crime.[2]
B. The trial court did not abuse its discretion in admitting the coworker’s testimony.
The final issue we address is whether the trial court abused its discretion in admitting Powell’s testimony. L.B. moved in limine to exclude, as hearsay, Powell’s testimony that three days prior to the incident the assailant came into the Store and asked if L.B. was working. The trial court agreed that the statement was hearsay because the Store was relying on the content of the question to prove that *1118 the assailant was in the Store specifically looking for L.B. However, the trial court permitted the testimony under section 90.803(3), Florida Statutes (2009), as a “state of mind” hearsay exception for statements offered to prove or explain subsequent conduct. At trial, Powell testified that:
A. Yes. I mentioned a gentleman who actually — he stood out because he did something that normal customers don’t do. He walked into the Store. He stopped in front of the ATM machine. The ATM machine is only three feet from the door. He asked me, was [L.B.] working, and I told him, “She doesn’t work this shift anymore,” and he made a face and turned around and walked out the door.
L.B. argues that the trial court abused its discretion in admitting Powell’s testimony of the assailant’s out-of-court inquiry because there was no statement of the assailant’s state of mind, or any intent, plan or motive, as required by section 90.803(3)(a) (2).
Section 90.803(3), Florida Statutes (2009), states:
(3) Then-existing mental, emotional, or physical condition.—
(a) A statement of the declarant’s then-existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is offered to:
1. Prove the declarant’s state of mind, emotion, or physical sensation at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.
(b) However, this subsection does not make admissible:
1. An after-the-fact statement of memory or belief to prove the fact remembered or believed, unless such statement relates to the execution, revocation, identification, or terms of the declarant’s will.
2. A statement made under circumstances that indicate its lack of trustworthiness.
“Testimony concerning out-of-court statements of the declarant’s then existing mental or emotional condition, when offered to prove the truth of the matter asserted, are admissible under section 90.803(3).” Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 803.3a (2011 ed.). The only requirement is that the evidence be relevant to an issue in the case. Id.
The trial court relied upon D.M.L. v. State, 976 So.2d 670 (Fla. 2d DCA 2008), in reaching its conclusion that the testimony was admissible to prove the assailant’s state of mind. In that case, D.M.L. was found guilty of criminal mischief in connection with damage to Cory’s truck. The trial court excluded the testimony of D.M.L.’s girlfriend that she was on the phone with Cory’s girlfriend around the time of the offense, and that she heard Cory state in the background, “There he is.” The Second District reversed, finding not only that the testimony was relevant to D.M.L.’s defense, but that the testimony should have been admitted under section 90.803(3) because it proved Cory’s “state of mind, i.e., that he was looking for D.M.L., or to prove or explain Cory’s subsequent act of swinging the bat at D.M.L.” Id. at 674. We agree with the trial court and affirm on this issue.
Here, as in D.M.L., Powell’s statement that the assailant was in the Store asking for the victim three days before the assault was both relevant and admissible under section 90.803(3). First, the statement was relevant to the issue of foreseeability. *1119 Secondly, it was admissible under section 90.808(3) because it tends to prove the assailant’s subsequent action, i.e. in returning to the Store to look for or assault L.B. Consequently, the trial court did not abuse its discretion in admitting this evidence.
III. CONCLUSION
Accordingly, for the reasons stated above, we reverse the final judgment entered in favor of the Store, and remand for a new trial excluding McCrary’s testimony that the sexual assault was a “victim-targeted” crime. We affirm, however, the trial court’s ruling admitting Powell’s testimony.
Affirmed in part; reversed in part and remanded for a new trial.

. Generally, admission of evidence is within the discretion of the trial court, and the trial court's ruling will not be disturbed on appeal absence a clear showing of an abuse of discretion. See, e.g., Davis v. Caterpillar, Inc., 787 So.2d 894, 897 (Fla. 3d DCA 2001); Cnty. of Volusia v. Kemp, 764 So.2d 770, 773 (Fla. 5th DCA 2000).

. Additionally, a review of case law in other jurisdictions reveals that criminal behavior testimony in negligent security cases is generally disfavored. See Birge v. Dollar Gen. Corp., 2006 WL 5175758 (W.D.Tenn. Sept.28, 2006); Eghbalpour v. BP W. Coast Prods., 2007 WL 841264 (Cal.App. 2 Dist.2007); Vittengl v. Fox, 967 S.W.2d 269 (Mo.Ct.App.1998), and cases cited therein. These courts have given various reasons for excluding this evidence, including; lack of expertise, Egh-balpour, at *2 ("Mr. McGoey is a security expert, not an expert in the inner workings of the criminal mind.”); confusing or misleading to jury and speculative, Vittengl, 967 S.W.2d at 279 ("Expert testimony may well confuse or mislead a juiy when the expert is offering conclusions about a matter which is not a proper subject of expert testimony. In such a case, the jury may be swayed by the speculation of the witness.”); and lack of evidence of reliable methodology, Birge, 2006 WL 5175758.