ROTHENBERG, J.
(dissenting).
Although I initially agreed with the majority’s decision to reverse the jury’s verdict in favor of the defendant, The Naked Truth, III, Inc. (“the store”), upon further reflection, I believe we erred. I would, therefore, grant rehearing and affirm the jury’s verdict.
The evidence introduced at trial is as follows. L.B., a sales clerk employed by the store, was working the “graveyard shift” on the night of December 25, 2007, when a man, who was later identified as Jose McCray (“the assailant”), entered the store, robbed L.B. at gunpoint, and raped her. It is undisputed that the establishment is well-lit, with regular and neon lighting throughout the store; there were sixteen cameras in operation at the time of the assault (some of the cameras record continuously, twenty-four hours a day, while others record when triggered by a motion sensor); there were signs inside the store informing patrons that they were being videotaped by cameras on the premises; the store utilized “drop safes” to limit the cash being held in the registers to an amount of less than $200; the sales clerks were able to view twelve of the sixteen cameras simultaneously via a monitor from a slightly elevated platform that also provided greater visibility of the store and its patrons; there was only one door (except for an emergency exit) which was locked; and patrons were only able to enter if the sales clerk “buzzed” them in. The store also contained several alarm systems, including a perimeter alarm, a fire alarm, a burglar alarm, police alarms, and panic alarms that could be triggered by pressing a fixed alarm button or activated remotely. Although L.B. was aware of these measures, and she was trained in how to use them, she testified that she did not have an opportunity to activate any of the alarms during the attack.
L.B. filed a complaint against the store claiming negligent security. In support of her claim, L.B. offered the expert testimony of Rosemary Erickson, Ph.D., who opined that this was a random but foreseeable crime of opportunity that could have been prevented if the store had utilized additional security measures, including employing an armed security guard and constructing a bullet proof barrier between the sales clerk and the store’s patrons. Dr. Erickson testified that because the store did not have these additional security measures in place, the store was negligent.
The store called several witnesses in direct response to these claims: another store employee, Xavier Powell (“Powell”); the lead detective; and an expert, Gregg *1120 McCrary. Powell testified as follows. The assailant entered the store three days prior to the assault on L.B. while Powell was working the late night shift. The assailant, who was not a regular customer, stood out because he did not act like a normal customer. The assailant merely walked into the store, asked for L.B. by name, and when he was told that she did not work that shift anymore “he made a face and turned around and walked out the door” and immediately exited the store. Unlike normal customers, the assailant did not “browse” around the store; did not look at any videos or purchase anything; and the entire “process” took twenty to thirty seconds. Further, when asked to describe the look on the assailant’s face when he was told L.B. no longer worked that shift, Powell testified the assailant appeared upset and disappointed.
Although the lead detective provided a detailed account of his investigation, the relevant portion of his testimony for purposes of this appeal is that the assailant lived in Broward County, twenty-two miles from the store.
The store’s security expert, Gregg McCrary, was offered and qualified by the trial court to render expert opinions on law enforcement and security matters. McCrary worked as an FBI agent for twenty-five years. He worked in the FBI’s Behavioral Science Unit for eight years; provided training and operations support; and trained FBI field agents in the investigation of sex crimes and violent crimes. During his tenure with the FBI, McCrary specialized in violent crimes, and based on his research, training, and experience, he became an expert in sex crimes and sex crime investigations. McCrary’s research was focused on the etiology of these crimes — to learn how and why sex crimes are committed in order to prevent them from being committed in the future. His research included interviewing killers, rapists, and child molesters, and studying the crimes they had committed.
McCrary’s expertise in the fields of violent crimes, sexual crimes, and crime prevention are well documented. He has taught at various law enforcement academies, including the National Police Academy of Spain, the National Police Academy of Portugal, the French National Police, and Scotland Yard. Since his retirement from the FBI, he has worked as a consultant, trained approximately 200 of the Fortune 500 companies on the prevention of workplace violence, trained companies on the prevention of robberies and other violent crimes, and presently teaches graduate level courses in forensic psychology and other criminal justice subjects at three national universities.
McCrary disagreed with the opinion rendered by L.B.’s expert — that the robbery and sexual assault of L.B. was a random act that was foreseeable and preventable, and that the store was therefore negligent by failing to provide additional security measures. McCrary testified that the evidence suggests L.B. was specifically targeted by the assailant, and victim-targeted crimes are difficult to prevent. McCrary explained that victim-targeted crimes are “some of the most difficult crimes to prevent” because the offender is more prone to take greater risks to reach the targeted victim.
In support of his conclusion, McCrary noted that the assailant came into the store three days before the assault, specifically asking for L.B. by name, and when he was told that L.B. no longer worked that shift he became upset, looked disappointed, and left the store without looking at or purchasing any items. McCrary also noted that the assailant did not live near the store — he lived in Broward County, twenty-two miles from the store. Impor *1121 tantly, the information McCrary relied on in forming his opinion that this was a victim-targeted crime was based on evidence admitted at trial, which the majority concedes was properly introduced.
McCrary testified that if this was a victim-targeted crime, it would have been difficult to prevent, and he provided as an example the shooting of Ronald Reagan in public by John Hinckley, despite the security measures in place to protect President Reagan. McCrary noted that in the instant case, the assailant had not been deterred by the locked door, bright lighting, cameras, monitors, signs warning patrons that they were being recorded, and the fact that there were other customers in the store at the time. Although the assailant may not have been aware that there were two other customers in the store when he first began the assault, when he later became aware that he and L.B. were not alone, he continued to assault L.B.
MY DISAGREEMENT WITH THE MAJORITY OPINION
The majority bases its reversal of the jury’s verdict on its conclusion that McCrary’s testimony runs afoul of this Court’s ruling in Smithson v. V.M.S. Realty, Inc., 536 So.2d 260 (Fla. 3d DCA 1988). Although the majority opinion sheds little, if any, light as to how specifically McCrary’s testimony conflicts with Smithson., it appears the majority’s decision is based on its conclusion that, although McCrary was qualified to render an opinion on security matters and whether the store was negligent, he could not opine “on the assailant’s motives for choosing L.B. as his target.” The problem with this conclusion is that Smithson does not hold that a witness may never be qualified to render an opinion regai’ding an assailant’s motive, but more importantly, McCrary did not even attempt to testify as to the assailant’s motive in committing these crimes. In fact, McCrary specifically stated that he was “not a mind reader” and he had no idea what the assailant’s motive was in targeting and attacking L.B.
A. Smithson
In Smithson, this Court found that the trial court erred in permitting the shopping mall owner’s expert to offer testimony regarding the robbers’ motives for committing the robbery and the murder of the victim. This Court’s conclusion was based on two findings: (1) the expert was not qualified to testify as to the perpetrators’ motives for choosing the victim as their target; and (2) the expert’s opinion regarding motive was based on his interview with the perpetrators, who did not testify at the trial, and which was recounted by the expert in his presentation to the jury. In sum, this Court found the expert was not qualified to testify as to motive and that he was being used as a conduit for the introduction of inadmissible hearsay evidence.
Smithson is inapplicable to the instant appeal. McCrary did not opine as to the assailant’s motive for targeting L.B. He stated that he was unqualified to render such an opinion. He also was not used as a conduit for inadmissible hearsay evidence. As already noted, L.B.’s co-worker, Powell, testified that the assailant came into the store three days prior to the assault looking and asking for L.B. by name, and when the assailant was told L.B. no longer worked that shift, he looked upset and disappointed and immediately left the store. Powell’s testimony, coupled with the lead detective’s testimony that the assailant lived twenty-two miles from the store, the evidence that the assailant returned three days after inquiring about L.B., and the fact that the assailant did not simply commit a robbery, but raped the *1122 very person he had inquired about, suggested this was a victim-targeted crime— evidence the majority concedes was properly admitted at trial.
Thus, because McCrary did not offer any opinion as to the assailant’s motive in targeting L.B. or in committing the crimes, and McCrary was not used as a conduit for the introduction of inadmissible evidence, the admission of McCrary’s testimony does not conflict with any holding, finding, or ruling in Smithson. McCrary merely relied on the evidence properly admitted at trial in forming his opinions that: (1) these were victim-targeted crimes; (2) victim-targeted crimes are difficult to prevent; and (3) the store was not negligent in failing to provide additional security measures to protect its employees.
B. McCrary was qualified to render the opinions he gave
Although McCrary did not testify as to the assailant’s motive, as the majority incorrectly states, he did testify that in his expert opinion, he believed these were victim-targeted crimes; victim-targeted crimes are difficult to prevent; and the store was not negligent in failing to provide additional security measures to protect its employees. The issue, therefore, is whether McCrary was qualified to render these opinions.
The standard of review for the trial court’s decision concerning the qualification of an expert witness and the scope of his testimony is abuse of discretion. See Cnty. of Volusia v. Kemp, 764 So.2d 770, 773 (Fla. 5th DCA 2000); see also Hinojosa v. State, 857 So.2d 308, 309 (Fla. 2d DCA 2003) (“A trial court has wide discretion in areas concerning the admissibility of evidence, and such rulings will not be disturbed absent an abuse of discretion.”). The record demonstrates the trial court did not abuse its discretion.
As already detailed earlier, McCrary had over twenty-five years of training and experience working with the FBI in the area of sexual crimes and other violent crimes. He not only served for many years as a field agent in the investigation of these types of crimes, he specialized and became an expert within the department as to these types of crimes. McCrary did extensive research on the etiology of sex crimes and other violent crimes in order to learn how and why they are committed in order to prevent future commission of these traumatic crimes. In addition to these qualifications, McCrary has taught at a number of police academies here and abroad, including Scotland Yard, and he has consulted with and trained hundreds of companies, including 200 of the Fortune 500 companies, on the prevention of workplace violence, including robberies and other violent crimes. McCrary currently teaches graduate level courses in forensic psychology and another criminal justice subject at three national universities.
Based on McCrary’s extensive experience, as already detailed, no one could reasonably conclude that McCrary was unqualified to render an opinion as to whether, based on the evidence introduced at trial, these crimes were likely victim-targeted crimes; victim-targeted crimes are difficult to prevent; and whether the security measures employed by the store were reasonable and adequate. Thus, the trial court did not abuse its discretion in permitting McCrary to testify regarding these issues.
C. If McCrary’s testimony was improper, L.B.’s expert’s testimony was improper
L.B.’s expert testified that the attack upon L.B. was foreseeable, completely pre- *1123 veritable, and L.B. was the victim of a random, opportunistic sexual assault. L.B.’s expert, a forensic sociologist, who works with OSHA in developing security guidelines for late-night retail establishments, was no more qualified to render an opinion that this was a random, opportunistic, preventable attack, than McCrary was to render an opinion that this was a victim-targeted, difficult to prevent, attack. They were both also qualified to testify regarding the security measures taken by the store, whether the measures were reasonable and adequate, and whether the store was negligent in failing to take additional precautions to protect its employees.
When considering L.B.’s motion to limit McCrary’s testimony, the trial court specifically inquired as to what L.B. expected her expert to testify to, and determined that the testimony was admissible because McCrary was qualified to render opinions on security matters and procedures; he did not intend to testify as to the assailant’s motives; his testimony was being used to refute the testimony of L.B.’s expert; and McCrary’s testimony was not based on inadmissible hearsay. Thus, the record and the trial court’s ruling reflect that what we have here are two qualified experts who offered conflicting opinions after considering the same admissible evidence, thus presenting a question for resolution by the jury, which resolved the question in the store’s favor.
CONCLUSION
The premise upon which the majority bases its reversal — that the store’s expert, McCrary, improperly testified as to the assailant’s motive for attacking L.B. — is incorrect. The record conclusively refutes this finding. McCrary never testified as to motive, and, in fact, admitted that he was unqualified to opine as to motive. McCrary, however, did, offer testimony to refute L.B.’s expert’s opinion that the attack upon L.B. was a random, opportunistic attack that was preventable, and that the store was negligent in failing to provide additional security measures. McCrary testified that based on the evidence he reviewed, and which was properly admitted at trial through other witnesses, he believed the attack on L.B. was a victim-targeted assault that was difficult to prevent; the security measures in place at the store were reasonable and adequate; and the store was not negligent. No abuse of discretion has been shown because the qualification and scope of an expert lies within the sound discretion of the trial court, McCrary was clearly qualified to render the opinions he offered, and McCrary’s testimony differed from that of L.B.’s expert’s testimony only as to the conclusions he reached. Thus, the jury’s verdict should be honored, and the judgment should be affirmed.
I, therefore, respectfully dissent.