LAMBERT, J.
Aldonia Mootry, as personal representative of the Estate of Russell Mootry, Jr., appeals the final judgment entered in favor of Bethune-Cookman University, Inc. (“BCU”) after a jury found that BCU did not materially breach its employment contract with Dr. Russell Mootry (“Mootry”).[1] BCU and Dr. Trudie Kibbe Reed[2] (“Reed”) cross-appeal the trial court’s or *18 der denying their motion for attorneys fees filed pursuant to section. 768.79, Florida Statutes (2012) and Florida Rule of Civil Procedure 1.442. ■ Concluding that the trial court committed reversible error in admitting certain hearsay evidence and allowing BCU’s outside counsel to provide opinion testimony that essentially advised the jury how to decide this case, we reverse the final judgment. On the cross-appeal, we affirm the order denying BCU and Reed’s motion for attorney’s fees based on their 2012 proposals for settlement and additionally find that, though the. court erred in denying BCU’s separate motion for attorney’s fees filed based on its 2013 proposal for settlement, the enforceability of that proposal for settlement is now premature pending retrial.

Facts

Mootry began teaching at BCU in 1977 and except for a brief period from 1979-1982, was continuously employed there until 2009 when his employment was terminated and this litigation ensued. In 1995, Mootry was awarded tenure and in 2005, he was appointed Dean of the School of Social Sciences. As a tenured professor, Mootry and BCU entered into annual contracts each year for his employment. Pertinent to this appeal, Mootry’s employment contract provides that BCU has “the power and authority to terminate this contract at any time for malfeasance, inefficiency, neglect of duty, or contumacious conduct.”
BCU also had a faculty handbook, which provided. that a tenured faculty member may be terminated for cause and listed .numerous grounds that constituted 'cause, including moral turpitude and violation of 'BCU’s policies regarding sexual harassment. The handbook explained the process that occurs following a complaint of sexual harassment, including the requirement that BCU promptly establish a committee to investigate the complaint. The faculty handbook also recognized that BCU would uphold “[t]he rights prescribed by the American-Association of University Professors (“AAUP”) when not-in conflict with the policies of BCU.” The AAUP manual contained provisions pertaining to charges of sexual harassment, that included the right to confront an accuser, an opportunity to cross-examine an accuser and witnesses, and the right to have specific charges to respond to and formulate a defense. “'
In May 2009, Reed hired Bo .Brewer (“Brewer”) to conduct interviews related to staffing for the Academic Affairs Department at • BCU. During the course of conducting interviews with-, BCU faculty members, Brewer was advised of alleged widespread sexual harassment of students by Mootry and other professors in the Department of Social 'Sciences. Brewer advised Reed of this possible problem and Reed, rather than appoint a committee to investigate as required by the BCU handbook, directed Brewer to investigate these allegations of sexual harassment. In conducting his investigation, Brewer promised anonymity to those individuals with whom he spoke. Brewer would thereafter periodically meet with Reed and when discussing his investigation, intentionally withheld from Reed the names of the individuals making the allegation's of sexual harassment. Moreover, Bréwer destroyed his notes that identified the individuals he interviewed in order to ensure the previously promised confidentiality.
On May 15, 2009, Mootry received written notice from Reed that he had been suspended from his employment without pay, based upon allegations of improper conduct -with female students. In this notice, Mootry was advised of the ongoing investigation and was ordered to meet with Brewer to discuss the investigation. Moo-try met with Brewer,' denied the allega *19 tions of sexual harassment, and inquired of Brewer the names of the individuals making the accusations against him. Brewer did not disclose to Mootry the names of these students.
At the conclusion of his investigation, Brewer prepared a written report summarizing his findings and presented the report to Reed. None of the individuals making the allegations of sexual harassment were named in the report. Brewer’s report also summarized his interviews with members of the BCU faculty. The report does not indicate that any of the interviewed faculty members actually witnessed the alleged sexual harassment by Mootry.
On May 29, 2009, after Reed received Brewer’s report, BCU terminated Moo-try’s employment and tenure “for cause.” The termination letter specifically provided that Mootry was terminated for-“moral turpitude, violation of the university’s policies regarding sexual harassment, violation of ethical code, conduct in violation of commonly accepted standards of morality, and failure to cooperate within the bounds of accepted standards.” Mootry administratively appealed his termination with BCU. During the appeal process, Mootry claimed that he had never been provided with Brewer’s report and had no information as to who was accusing him of sexual harassment. The appeal committee upheld Moo-try’s termination, and Mootry filed the instant suit.
On appeal, Mootry argues four grounds for reversal. First, Mootry asserts the trial court erred in denying his motion for partial summary judgment as to the issue of BCU’s liability for breaching the employment contract.[3] Second, Mootry argues., that Brewer’s report was hearsay that should not have been admitted into evidence. Third, Mootry contends the court permitted BCU’s outside counsel to provide opinion testimony that improperly told the jury how to decide the case. Fourth, Mootry claims the trial court erred in denying his motion for a new trial because the verdict was contrary to the manifest weight of the evidence. We agree with Mootry on issues two and three. Accordingly, we reverse the final judgment in favor of BCU and remand for a new trial.[4]

Brewer Report

Mootry argues that the trial court erred in admitting Brewer’s investigation report because it contained numerous hearsay statements. Section 90.801, Florida Statutes (2013), defines “hearsay” as “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The trial court recognized that the report contained statements of unidentified individuals detailing acts of sexual harassment allegedly committed by Mootry and the other professors. Nevertheless, the court determined that the report was admissible,, not to establish the truth of the matter asserted, but to show the reasonableness of BCU’s actions during its investigation and termination of Mootry’s employment. The court also gave the jury a limiting instruction to that effect.
While hearsay evidence is generally inadmissible, if the evidence “is offered for *20 a purpose other than to prove the truth of the matter asserted, it is by definition not hearsay.” Diaz v. State, 890 So.2d 556, 558 (Fla. 5th DCA 2005) (citing King v. State, 684 So.2d 1388, 1389 (Fla. 1st DCA 1996)). However, when an out-of-court statement is being “offered for a purpose other than proving the truth of its- eon-tents[, it] is admissible only when the purpose for which the statement is. being offered is a material issue in the case.” King, 684 So.2d at 1389-90 (citing State v. Baird, 572 So.2d 904, 907 (Fla.1990)).
We find that the trial court erred in determining that BCU’s “reasonableness” is essentially a material issue to this breach of contract action. Here, Mootry could be properly terminated under his faculty agreement with BCU only if he had breached, its provisions. Whether BCU acted reasonably or in good faith in terminating his contract for cause is not a defense. See Placet, Inc. v. Ashton, 368 So.2d 404, 409 (Fla. 3d DCA 1979) (“The appellants claim that they may not be held liable for a breach of this agreement since they acted in ‘good faith’ in firing [the employee]. Once more, we cannot accept this contention.” (footnote omitted)). Accordingly, the Brewer report was in fact hearsay as it was utilized to prove the truth of the matter being asserted — that Mootry sexually harassed students at BCU.
BCU next argues that if the report was erroneously admitted into evidence, the error was harmless because Mootry was terminated not only for sexual harassment, but also for not taking appropriate action after having knowledge of instances of sexual harassment committed by other professors at the school. In order to establish that an eiror is harmless, “the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict.” Landmark Am. Ins. Co. v. Pin-Pon Corp., 155 So.3d 432, 442 (Fla. 4th DCA 2015) (quoting Special v. W. Boca Med. Ctr., 160 So.3d 1251, 1256 (Fla.2014)).
We have little difficulty- in finding that the admissibility of the unredacted Brewer report was not harmless error. In addition to being replete with hearsay statements from unnamed alleged- victims and faculty members, detailing acts of sexual harassment allegedly committed by Moo-try and the other professors, the report contains Brewer’s own- conclusions in which he opines that: (1) the “least severe allegation [of sexual abuse] is terminable [of employment]”; (2) the “failure to eradicate the behaviors [of sexual harassment], or the perception.that the behaviors exist, place current and future students at an unacceptable-risk of mistreatment ...”; (3) “the perception of guilt of [Mootry and the professors] is insurmountable”; and (4) he recommends the termination of the employment relationship. The report concludes with a. brief synopsis of Brewer’s lengthy experience in conducting sexual harassment investigations and providing sexual harassment training. Essentially, this report is a conduit for unsubstantiated hearsay evidence of sexual harassment, compounded with analysis and opinion of what may be perceived by the jury to be from an expert in the field recommending that termination is appropriate based on the sexual harassment. Therefore, the admission of the Brewer report was not harmless error, and we reverse and remand for a new trial.
Because we are reversing this case for a new trial, we_ will briefly address other evidence admitted at trial over Moo-try’s hearsay objections. Dr. Janice Allen-Kelsey, a dean and professor at BCU, *21 testified that a student had provided her with information relating to allegations that Mootry had squeezed the student’s buttocks while hugging her. The student did not testify at trial and there is no indication that the professor observed this alleged behavior. The admission of this testimony was error. Similarly, Reed’s testimony that one student told her that another student was having sex with Moo-try is hearsay and should not be admitted into evidence on retrial.

Opinion Testimony from BCU’s Outside Counsel

Next, Mootry argues that the trial court erred in allowing Kelly Parsons Kwiatek (“Kwiatek”) to provide opinion testimony as to matters that were for the jury to decide. Kwiatek is an attorney, specializing in labor and employment law, who was employed by the law firm that served as outside counsel for BCU. Kwia-tek was involved in the investigation of Mootry to the extent that Kwiatek was contacted by Brewer and Reed at various times and advised Reed on the situation as it developed.
At trial, BCU called Kwiatek to testify. Specifically, Kwiatek testified that, in her opinion, BCU had “cause” to terminate Mootry’s employment and that BCU had provided Mootry with “due process.” Kwiatek also opined that BCU did not have an obligation to form a committee to investigate allegations of sexual harassment and that, in her view, there was no legal requirement that Mootry was entitled to confront his accusers.
We.apply the abuse of discretion standard of review to a trial court’s decision on the admissibility of an expert opinion. See McWatters v. State, 36 So.3d 613, 628 (Fla.2010).
Section 90.703,. Florida Statutes (2013), provides: “Testimony in the form of an opinion, or inference otherwise admissible is-not objectionable because it includes an ultimate issue to be decided by the trier -of fact.” § 90.703, Fla. Stat. “However, this rule does not render admissible all opinions on the ultimate issues. Witnesses will be prevented from expressing their conclusions when the opinion only tells the jury how to decide the case and does not help the jury to determine what occurred.’ ” Schneer v. Allstate Indem. Co., 767 So.2d 485, 488 (Fla. 3d DCA 2000) (quoting Charles W. Ehrhardt, Florida Evidence, § 703.1 (2000));. see also Cty. of Volusia v. Kemp, 764 So.2d 770, 773 (Fla. 5th DCA 2000) (“If expert testimony merely relays matters that are within the common understanding of the jurors or tells the jury how.to decide the case,, it should not be admitted.”) (citations omitted).
Mootry’s breach of contract action was premised on two bases. First, Mootry argued that there was no cause to terminate his contract because he did not sexually harass anyone and, second, that BCU did not follow the proper and required pre-termination and post-termination procedures in firing him. Kwiatek was essentially permitted to tell the jury that, in her opinion, they should answer these questions adversely to Mootry and find that BCU did not breach the contract. We conclude that the trial court erred in permitting this type of opinion testimony, and in light of Kwiatek’s expertise in this area of the law and her direct involvement in the process leading up. to Mootry’s termination, we .reject BCU’s claim that the admission: of this- evidence was harmless érror.

Proposals for Settlement

BCU and Reed assert in their cross-appeal that the trial court erred in finding that their' separate proposals for *22 settlement served upon Mootry on July 2, 2012, were invalid, because they were not made in good faith. Reed tendered a $100 proposal for settlement pursuant to Florida Rule of Civil Procedure 1.442 and section 768.79, Florida Statutes (2012), to settle the defamation cause of action being asserted against her by Mootry.[5] BCU tendered three separate $100 proposals for settlement to Mootry to fully resolve the three claims then pending against BCU at the time. Mootry did not accept any of the proposals for settlement.
Following the éntry of final judgments finding no liability on the part of BCU or Reed, they timely filed a motion for attorney fees pursuant to rule 1.442[6] and section 768.79. Under this statute, if a defendant files an offer of judgment, which the plaintiff does not accept, arid the defendant is found not to be liable, then “the defendant shall be entitled to recover reasonable costs and attorney’s fees incurred by him or her....” § 768.79(1), Fla. Stat: (2013). However, “the court may, in its discretion, determine that an offer was not made in good faith. In such case, the court may disallow an award of costs and attorney’s fees.” Id. § 768.79(7)(a). '
For an offer tó be made in good faith, the offer must “have some reasonable foundation on which to base an offer.” Schmidt v. Fortner, 629 So.2d 1036, 1039 (Fla. 4th DCA 1993). “[T]he question to be considered by the court in determining good or bad faith is whether the offer bears a reasonable relationship to the amount of damages suffered and a realistic assessment of liability.” Evans v. Piotraczk, 724 So.2d 1210, 1211 (Fla. 5th DCA 1998).
In denying the motions for attorney’s fees, the trial court found that:
In July 2012, the outcome of the various claims was far from certain. The issues in this case had far reaching significance to both parties and to many others not parties to the case.... Discovery would prove to be extensive and far reaching, yet only preliminary discovery was completed. In shortj the nominal proposals filed by both defendants bore no relationship to the apparent importance of the case to both sides, as evidenced from the scope and extent of their actions.
“The standard of review upon a finding that a proposal for settlement was not made in good faith is abuse of discretion.” Land & Sea Petroleum, Inc. v. Bus. Specialists, Inc., 53 So.3d 348, 354 (Fla. 4th DCA 2011) (citing Sharaby v. KLV Gems Co., 45 So.3d 560, 563 (Fla. 4th DCA 2010)). “If reasonable men could differ .as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion.” Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla. 1980). Based upon our careful review of the record, we conclude that the trial court did not abuse' its discretion in finding that the July 2, 2012 proposals for-settlement were not made in good faith at the time they were served.[7]
*23 In July 2013, BCU tendered to Mootry a new proposal for settlement. At that time, BCU offered to pay Mootry $140,000 in exchange for Mootry executing a settlement agreement and general release and voluntarily dismissing with prejudice. all claims pending against BCU in the operative complaint. The proposal for settlement specified that the proposal was not addressing Mootry’s claim against Reed, individually, for defamation. Attached to the proposal for settlement was the pro-' posed settlement agreement and general release Mootry was to execute if he accepted this proposal. However, the release provided that by signing the document, Mootry would be waiving, releasing, and forever discharging both BCU and Reed from any claims and potential claims. The trial court found that this requirement caused the proposal for settlement to be an invalid undifferentiated joint offer that would' not support an award of attorney’s fees.
“An order granting or denying fees based on a proposal for settlement is reviewed de novo.” Mathis v. Cook, 140 So.3d 654, 656 (Fla. 5th DCA 2014) (citing Sparklin v. S. Indus. Assocs., Inc., 960 So.2d 895, 897 (Fla. 5th DCA 2007.)). In Mathis, which the trial court did not have the benefit of at the time it entered its order, this court held that “[t]he fact-that the proposals only stated that they were made on behalf of [one defendant], but the releases indicated that all defendants. would be released if the [plaintiffs] agreed to the proposals, did not create an ambiguity or transform the separate offers into undifferentiated joint offers.” Id. at 657-58 (citing Health First, Inc. v. Cataldo, 92 So.3d 859, 871 (Fla. 5th DCA 2012)). BCU argues and Mootry concedes that in light of Mathis, the trial court was incorrect in finding that the proposal constituted an undifferentiated joint offer.
Mootry further concedes that- BCU’s 2013 proposal for settlement was not ambiguous. Accordingly, we reverse the trial court’s order holding that-the July 2013 proposal for settlement was invalid because it was an undifferentiated joint offer, but do so without prejudice to Mootry asserting any additional grounds as to why this proposal for settlement should not be enforced if BCU is entitled to seek recovery of attorney’s fees under this proposal based upon the result of the retrial.
REVERSED and REMANDED for new trial on main appeal; AFFIRMED in part and REVERSED in part on cross-appeal.
BERGER and WALLÍS, JJ., concur.

. Dr. Mootry passed away during the pen-dency of this appeal.

. Dr. Reed is the president of Bethune-Cook-man University.

. Because we are reversing the final judgment and remanding this case for a new trial based on the trial court’s error in admitting certain evidence, we decline to address the merits of this issute, but do so without prejudice to Mootry, if he so chooses, filing a new, motion for summary judgment and the trial court considering and ruling on such a motion based on proper summary judgment evidence.

. As a result,' Mootiy's fourth issue is now moot.

. The defamation claim was the sole cause of • action asserted against Reed. Mootry has not challenged the final-judgment entered in favor of Reed after her motion for directed verdict at trial was granted.

. Florida Rule of Civil Procedure T.442 is titled “Proposal for Settlements” and implements section 768.79, Florida Statutes, which is the offer of judgment and demand for judgment statute,

.Though we have ordered a new trial, we have 'elected to address the merits of the trial court’s denial of the motion to enforce the .2012 proposals for settlement for -two reasons. First, the issue is ripe as to Reed because she is not a party to the retrial. Sec *23 ond, even if BCU prevails at the second trial, - our analysis would not be affected.